## NORMAN v. CAMMACK.

### Opinion delivered October 21, 1912.

1. APPEAL AND ERROR—JUDGMENT VACATING DEFAULT JUDGMENT—APPEAL-ABILITY.—A complaint by a defendant which seeks to vacate a default judgment on the ground that it was procured by fraud practiced by defendant's attorney is sustained by Kirby's Dig., § 4431, authorizing a new trial for fraud practiced by the successful party; and, the proceeding being in effect an independent action, a judgment granting relief is final and appealable. (Page 123.)

2. SAME—NECESSITY OF BILL OF EXCEPTIONS.—A judgment will not be reversed on appeal for insufficiency of the evidence where the evidence on which it was based is not brought up by bill of exceptions. (Page ₋₋3.)

3. INSTRUCTIONS—APPLICABILITY TO ISSUES.—When, in an action to recover on a note given for the purchase of stock in a corporation which became insolvent soon after the sale, there was no issue raised, either by the pleadings or the evidence, as to a failure of consideration for such note, it was error to instruct the jury to find for the defendant if there was no consideration for the note. (Page 127.)

Appeal from Ashley Circuit Court; *H. .W. Wells,* Judge; reversed.

*Geo. W. Norman* and *J. C. Knox,* for appellant.

1.   It was error to overrule the demurrer to the amended and. substituted answer. Cammack was barred. Kirby's Dig.. § 6220; 33 Ark. 161; *Ib.* 454.

2.   Instruction No. 3 for defendant was erroneous. The question of no consideration was not in issue.

*George & Butler* and *Compere & Compere,* for appellee.

FRAUENTHAL, J.   This is an action instituted by M. F. Norman, the plaintiff below, upon a note executed to her by the defendants.   The note was for $3,800, dated February 20, 1906, and due January 1, following.   It was signed by A. W. Cammack Company, W. T. Files, J. C. Norman and A. W. Cammack.   The suit was instituted against the makers of the note, and was made returnable at the January, 1909, term of the circuit court.   At that term of the court W. T. Files filed an answer, and the case as to him was continued.   Judgment by default was then taken against the remaining defendants. Subsequently, during the same term of court, the judgment by default against the defendant Norman was set aside, upon motion of plaintiff's attorney.   At the following term of said court, A. W. Cammack filed a complaint seeking to vacate said default judgment against him upon the ground, amongst others, that it had been obtained by fraud practiced by the plaintiff's attorney.   To this complaint the plaintiff made answer, and the proceeding seeking to vacate said judgment was submitted to the court upon said complaint, the response and the evidence of witnesses; and the court entered a judgment vacating said default judgment and permitting the said defendant Cammack to file answer to the original complaint upon said note.·   That suit proceeded to trial and resulted in a judgment in favor of the defendants, from which this appeal is prosecuted.

From the judgment vacating the default judgment the plaintiff at the time prayed an appeal, but did not prosecute a separate appeal therefrom. No bill of exceptions was made of the evidence adduced upon the hearing of the complaint seeking the vacation of the default judgment, nor was any

motion for new trial filed. The appeal from that judgment is brought up with the appeal taken from the final judgment rendered in the trial upon the merits of the case, and the rendition of the judgment vacating the default judgment is assigned as one of the errors which calls for a reversal óf said final judgment.

The proceeding seeking the vacation of the default judgment was warranted by section 4431 of Kirby's Digest. It was in effect an independent action for that purpose, and the judgment entered therein was final in settling the rights of the parties to a vacation of the default judgment, and was appealable. *Ayers* v. *Anderson-Tully Co.*, 89 Ark. 163. In order to have such judgment reviewed upon appeal for any errors committed in its rendition, it was essential that the evidence adduced upon the trial of the proceedings should have been preserved by bill of exceptions, as in any other case appealed to this court; otherwise it will be presumed that there was sufficient evidence to support the findings made by the court rendering the vacating judgment. In such judgment it is recited that from the evidence the court found that the default judgment was procured through the fraud of plaintiff's attorney and the attorney whom defendant Cammack had employed to represent him to make defense to that suit. This was sufficient to justify the rendition of the judgment vacating the default judgment; and if the appeal prayed by plaintiff from that judgment has been properly perfected, although no separate appeal therefrom has been taken to this court, no alleged errors committed by the court in rendering that judgment have been properly preserved, so that they can be reviewed upon appeal. It follows that the judgment vacating said default judgment must be affirmed.

In their answer to the original complaint the defendants W. T. Files and A. W. Cammack admitted the execution of the note sued on, but alleged that it was executed for a certain interest which the plaintiff owned in a mercantile corporation, and they resisted recovery upon the ground (1) that plaintiff by her agent made false representations as to the assets and liabilities of said corporation which had induced the execution of the note, and (2) that the note was signed upon agreement that said Files should have thirty days in which to examine

whether said representations as to said assets and liabilities were true, and, if not, he would have the right within that time to refuse to make the purchase, and thereupon would be entitled to a return of said note. The testimony which was introduced upon the trial of this case is quite voluminous, and we find it only necessary to state in brief manner the testimony showing the contentions of the respective parties, in order to present the grounds for our determination of this appeal.

It appears from this testimony that James C. Norman and R. C. McBride were the owners of a mercantile business which they had conducted for some years, and in 1903, with the remaining stock of goods as the chief asset, they, in connection with A. W. Cammack, organized a mercantile corporation known as the A. W. Cammack Company with its place of business located at Portland, Arkansas. These three parties were the sole stockholders of the corporation, each being the owner of 120 shares of its capital stock, each share of which was of the par value of $25. In 1904 the plaintiff purchased an interest in this corporation. She was represented at all times in her transactions with this corporation and with the defendants by her husband, John C. Norman, who is the uncle of James C. Norman. She invested in that company something in excess of $6,000, obtaining therefor 160 shares of the capital stock of the A. W. Cammack Company, and an interest in a gin company owned by that corporation; and her husband as her agent assisted for a year or two thereafter in running the business of the company. Subsequently, the plaintiff desired to sell her entire interest in the corporation and gin company, and the controlling questions involved in this case are, to whom did she sell said interest, and what were the terms and conditions of the sale?

The testimony introduced upon the part of the defendants tended to prove that on February 20, 1906, James C. Norman approached said Files about making a purchase of plaintiff's interest in said corporation. Files thereupon met with plaintiff's husband and Jas. C. Norman and A. W. Cammack at the company's office on that day, and he and plaintiff's agent then entered into an agreement relative to the purchase of said interest. This testimony tended to prove

that John C. Norman, as plaintiff's agent, and James C. Norman then represented to the said Files that the property of the mercantile corporation consisted of a stock of goods which inventoried $7,000 and of book accounts amounting to $4,000, and of some mules, and that the stock in the gin company amounted to $1,500; that the liabilities of the corporation amounted to $2,000. That it was then agreed that the plaintiff would sell her interest in said companies to said Files for $3,800, for which the note was then executed by him, with James C. Norman and A. W. Cammack as sureties. That Files did not know anything relative to the assets and liabilities of the corporation, and it was agreed that he should have thirty days in which to investigate these; and if he found that the representations were not true, he should notify said James C. Norman and A. W. Cammack, and thereupon there would be no purchase and sale of the plaintiff's interest, and the note should be returned to him. There was also testimony adduced by defendants tending to prove that the representations made as to the amount of the stock of goods and accounts owned by the corporation were false, and that its liabilities were larger than represented. Within three or four days after February 20, Files learned this, and at once notified said Norman and Cammack that he was not satisfied and would not make the purchase. There was also testimony tending to show that Cammack at once notified plaintiff's husband and agent of the refusal of Files to purchase plaintiff's interest, and that he came to Portland at a later date and promised to surrender the note, but later refused to do so.

Testimony on the part of the plaintiff tended to prove that plaintiff sold her interest in the corporation and gin company to the A. W. Cammack Company for $3,800, for which that corporation executed this note with W. T. Files, James C. Norman and A. W. Cammack as sureties thereon; that she did not sell her interest in the corporation and gin company to said Files at all. This testimony tended also to prove that James C. Norman, in addition to the shares of stock owned by him in the corporation at its organization, had subsequently acquired the 120 shares owned by said McBride, and that on February 20, 1906, he sold this McBride stock to said Files for $500, for which Files executed to him his due bill, and this was

the sole interest which Files at any time purchased or owned in the corporation. This testimony further tended to prove that no false representations had been made to Files as to the assets or liabilities of the corporation, and that no agreement had been made with him that the note sued on should be held thirty days to await an examination of said representations as to the corporation by said Files before it should become effective.

These, briefly stated, were in substance the contentions of the parties as to the issues made by the pleadings in this case. The defendants contended that the plaintiff sold her interest in the mercantile corporation and gin company to said Files, and that he executed the note as principal, with said Norman and Cammack as sureties thereon; that representations were made to him as to the assets and liabilities, which he had a right to examine within thirty days before the note should become effective, and, if he found them untrue, it should be returned to him. That within the stated time he found that the representations made relative to the assets and liabilities of the corporation were false, and notified the parties of his refusal to purchase. The plaintiff contended that she had sold her interest in the properties of the corporation and gin company to the A. W. Cammack Company, which corporation signed the note through its president, A. W. Cammack, and that the defendants signed it as sureties for that corporation. On the trial of the case there was testimony adduced tending to show that the company was in bad financial condition in February, 1906, and that it continued for a year or so thereafter, when it failed and its stock became worthless. But there was no plea made by the defendants that there was a failure of consideration for which this note was executed, and such plea was not made an issue in the case.

The court gave certain instructions requested by the plaintiff, and refused to give a number of instructions requested by her, the rulings upon which it is urged by her counsel were such errors as to call for a reversal of the judgment. We do not deem it necessary to set any of these instructions out or to note them in detail. It is sufficient to say that we have examined them and do not find that any of the rulings in the

giving and refusing of instructions asked by plaintiff was so prejudicial as to call for a reversal of this case.

At the request of the defendant the court gave three instructions. Two of them refer to the issues made by the pleadings in the case, and we think correctly presented those issues. The third instruction given at the request of the defendants was as follows; "If the jury find from the preponderance of the evidence that no consideration was paid or delivered for said note, then your verdict will be for the defendant."

This instruction related to a matter which was not made an issue in the case. As above stated, the defendants did not in their answer plead a failure or want of consideration of the note. No evidence was introduced or directed to the issue as to whether or not there was a want or failure of consideration for the execution of this note. That was not an issue in the case, and did not call for the introduction of testimony thereon. If, as contended by the plaintiff, she sold her interest in the corporation to the A. W. Cammack Company, and the defendant signed the note sued on as sureties for that company, then they would be liable although subsequently the corporation became insolvent, because under such circumstances there was sufficient consideration for the execution of the note. The above instruction No. 3 was therefore entirely abstract and misleading. It may be that, because this corporation subsequently failed, the jury believed that at the time the note was executed it was in a failing condition, and for that reason there was no consideration for the note. On this account the instruction given was highly prejudicial to the rights of the plaintiff.

For the error in giving said instruction, the judgment must therefore be reversed, and the cause remanded for new trial.