FIELDS *v.* STATE.

Opinion delivered June 12, 1922.

1. HOMICIDE—KILLING WITH DEADLY WEAPON.—The killing of a person with a deadly weapon when there are no circumstances of mitigation, justification or excuse is at least murder in the second degree.

2. HOMICIDE—MALICE.—In a trial for murder, whether a killing was done with malice *held* under the testimony to be a question for the jury.

3. HOMICIDE—INFERENCE OF MALICE.—In a trial for murder, the jury may infer malice from a killing with a deadly weapon with manifest purpose of taking life, where there were no mitigating circumstances.

4. CRIMINAL LAW—CONCLUSIVENESS OF VERDICT.—As the jury are the sole judges of the weight and credibility of evidence, a verdict supported by substantial evidence cannot be disturbed on appeal, even though believed to be against the weight of evidence.

5. HOMICIDE—INSTRUCTION.—In a trial for murder, an instruction following Crawford & Moses' Dig., § 2375, that to justify a killing in self-defense the danger must appear to defendant, acting without negligence, to be so urgent and pressing that killing is necessary to save himself from death or great bodily harm, that the person killed was the assailant, or defendant in good faith must have declined further contest, did not prejudice defendant, where other instructions given at the request of defendant fully presented the law of self-defense.

6. CRIMINAL LAW—BURDEN OF PROOF—INSTRUCTION.—The court charged that "a reasonable doubt is where, after a careful consideration and comparison of all the evidence in the case, the jury is not convinced to a moral certainty of the truth of the charge, which means the guilt of the defendant. It is not a mere possible doubt, but a real substantial doubt which arises from the evidence in the case." *Held* not to shift the burden on defendant.

7. HOMICIDE—ARGUMENTATIVE INSTRUCTION.—An instruction in a prosecution for murder that, if the evidence failed to show any motive of accused, this should be considered in his favor with all other facts and circumstances, being argumentative, and tending to invade the jury's province, was properly refused.

8. CRIMINAL LAW—INSTRUCTION.—The court is not required to single out evidence to show motive or absence of motive to commit crime for which accused is tried and give a special charge upon it in favor of accused.

Appeal from Columbia Circuit Court; *Charles W. Smith*, Judge; affirmed.

*Henry Stevens* and *Powell & Smead*, for appellant.

*J. S. Utley*, Attorney General, *Elbert Godwin* and *W. T. Hammock*, Assistants, for appellee.

HART, J.  Nathan Fields was indicted for the crime of murder in the first degree, charged to have been committed by shooting and killing Grady Talley with a pistol. He was tried before a jury, which returned a verdict of guilty of murder in the second degree, and fixed his punishment at imprisonment in the State Penitentiary for ten years. From the judgment of conviction the defendant has duly prosecuted an appeal to this court.

It is earnestly insisted by counsel for the defendant that the evidence is not legally sufficient to support the verdict.  The killing of a person with a deadly weapon, when there are no circumstances of mitigation, justification, or excuse at the time of the killing, is murder in the second degree.  *Young* v. *State*, 99 Ark. 407, and *Reed* v. *State*, 102 Ark. 525.

Counsel for the defendant claim that there is no evidence in the record tending to show malice on the part of the defendant or any circumstances from which the jury might infer malice in the killing.

E. S. Dunn and E. D. Haynes were eye-witnesses to the killing, and were the principal witnesses relied upon by the State to convict the defendant.

According to the testimony of E. S. Dunn, he went to a party at Tom Watson's home in Columbia County, Ark., on Saturday night, November 20, 1920.  He passed Tom Winn, Grady Talley and Mr. Watson at the gate. He heard Watson tell the other two men not to talk so loud because there were ladies in the house.  Talley said, "If we get too loud, just call us down, that is what we want you to do."  Dunn passed on in the gate and Watson also came in.  The defendant Fields at the same time passed out of the gate.  The witness went on the porch

and stood there looking out. It was a bright moonlight night. He saw Winn and Talley outside some steps away from the front gate. Fields was three or four steps from them and next to the gate. Fields first fired three shots at Winn. When Winn fell, Fields fired four more shots at Talley. Fields fired all the shots that were fired there. Neither Winn or Talley fired at Fields. Both Winn and Talley were killed by the pistol shots fired at them by Fields. Fields then came into the house and exhibited two bottles of Garry Owen Bitters and a pistol, which he said he had gotten out of their pockets. The witness was acquainted with all of the parties, but disclaimed any interest in the case. One of the shots fired at Talley struck him in the back. Winn and Talley both died almost instantly after they were shot, and neither of them attempted to shoot at the defendant or inflict upon him any injury.

According to the testimony of E. D. Haynes, he first saw the defendant and the two men who were killed by him walking together from the front yard gate towards some horses that were hitched out in front of it. When they got to the horses, they talked for a little while and started back to the gate. As they walked along the defendant stepped out in front of Winn and Talley and began to shoot at Winn with a pistol. The defendant shot at Winn three times. When Winn fell, the defendant began to shoot at Talley, who had commenced to back away. He shot at Talley four times and several of the shots struck his body. Winn and Talley died almost instantly. It was a bright moonlight night, and the witness could see the three men plainly. He could tell by the flash of the pistol that all of the shots were fired by the defendant and none were fired by Winn or Talley. He could not see that Winn or Talley made any attempt to shoot or to injure the defendant.

Under the authorities cited above, the jury itself is to determine the question of malice, and it may infer malice when the killing is done with a deadly weapon

with manifest purpose to take life without any mitigating circumstances.

The circumstances of the killing detailed by these witnesses were sufficient to warrant the jury in finding the defendant guilty of murder in the second degree. The defendant adduced evidence tending to show that Winn and Talley had said that they were coming to the party at Watson's house for the purpose of provoking a difficulty with the defendant and then killing him. The evidence adduced in the defendant's behalf, also, shows that Winn fired the first shot, and it may also be stated that several witnesses testified to this fact.

We need not, however, set out this evidence in detail, for it is not within our province to pass upon the weight of the evidence. Under the settled rule in this State, the jury are the judges of the credibility of the witnesses, and where there is any evidence of a substantial character to support the verdict of a jury, we are not at liberty to disturb it upon appeal, notwithstanding we might believe that it was against the weight of the evidence.

The undisputed evidence shows that the deceased was killed with a pistol, and, according to the witnesses for the State, there was no provocation for it. According to their testimony, the defendant drew his pistol and shot Winn and Talley at a time when they were making no effort to shoot him or to inflict bodily injury upon him. Under these circumstances the jury might have inferred malice in the killing, and the testimony, if true, justified the verdict.

It is next insisted that the court erred in giving instruction No. 7, which reads as follows:

"You are instructed that in ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary, as it appears to the defendant, acting without negligence on his

part, and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further contest before the mortal injury was inflicted.''

This instruction was almost a literal copy of sec. 2375 of Crawford & Moses' Digest. The defense was that the defendant shot Winn and Talley in order to prevent them from killing him or receiving great bodily injury at their hands. Other instructions on self-defense were given at the instance of the defendant. The jury was fully instructed upon the appearance of danger to the defendant, in accordance with the principles of law heretofore laid down by this court.

The court also, at the request of the defendant, instructed the jury upon his right to kill Winn and Talley if they were engaged in carrying out a conspiracy to kill him or to do him great bodily harm. Therefore, we think the record affirmatively shows that no prejudice whatever could have resulted to the defendant from giving instruction No. 7.

The next assignment of error is that the court erred in giving for the State instruction No. 12, which is as follows:

''A reasonable doubt is where, after a careful consideration and comparison of all the evidence in the case, the jury is not convinced to a moral certainty of the truth of the charge, which means the guilt of the defendant. It is not a mere possible doubt, but a real substantial doubt which arises from the evidence in the case.''

It is insisted by the defendant that the instruction is inherently wrong because by a negative definition of the term ''reasonable doubt'' the burden is shifted upon the defendant. We cannot agree with counsel for the defendant in this contention. The instruction is in accord with the rule laid down in *Bell* v. *State,* 81 Ark. 16, and many other decisions of this court.

The next assignment of error is that the court erred in refusing to give, at the request of the defendant, instruction No. 10, which is as follows:

"The court instructs the jury that, if the evidence fails to show any motive upon the part of the accused to commit the crime charged against him, this is a circumstance in favor of his innocence which the jury ought to consider, together with all the other facts and circumstances, in making up their verdict."

There was no error in refusing to give this instruction. It was argumentative in form and tended to invade the province of the jury. It was proper to introduce testimony of facts tending to show motive or absence of motive for the commission of the crime by the defendant as tending to establish his guilt or innocence. The court is not required, however, to single out the evidence on this point and give a special charge upon it in favor of the defendant. *Ince* v. *State,* 77 Ark. 418, and *Scott* v. *State,* 109 Ark. 391.

The case was submitted to the jury upon instructions which were full and complete. They fully presented to the jury the respective theories of the State and of the defendant.

We find no prejudicial error in the record, and the judgment will therefore be affirmed.