GRAHAM v. GRAHAM.

4-5646     133 S. W. 2d 627

Opinion delivered November 13, 1939.

■■■■■■

*Steve Carrigan,* for appellant.

*D. H. Crawford,* for appellee.

MEHAFFY, J.   The appellant, Charlie Graham, and appellee, Mattie Graham, were divorced in June, 1932, and this action was begun in June, 1938, practically six years after the divorce decree.   This suit was brought by Charlie G. Graham against Mattie Graham and others in the Clark chancery court to set aside a deed purporting to have been executed, signed and acknowledged under the directions and orders of a certain decree claimed to have been rendered in the chancery court on June 8, 1932.   The divorce suit was brought by Mattie Graham against Charlie G. Graham, and Charlie G. Graham was granted a divorce on his cross-complaint, and was ordered to pay a certain sum as alimony.   It was alleged that the deed was forged and that the decree was obtained by fraud.   Plaintiff alleged that in the divorce case he and Mattie Graham agreed that Mattie Graham could use and occupy a certain dwelling house and the real estate owned by Charlie G. Graham in

Gurdon, as long as she chose to use and occupy the same, and that she was to pay the current taxes and keep the property in repair; that Charlie G. Graham, in pursuance of said agreement, turned over said real estate and dwelling house to Mattie Graham, that she might occupy and use the same under said verbal agreement and stipulation as long as she chose to occupy said house; he alleged that Mattie Graham thereafter secretly and without authority, and unknown to Charlie G. Graham, fraudulently and unlawfully caused the decree in said case to be prepared and put on record in the Clark chancery court ordering and directing that Charlie G. Graham deed his equity in the house and real estate to Mattie Graham; that said decree was written and placed on record by Mattie Graham without right or authority and in fraud of the order and decree rendered by the chancery court, and without the knowledge of Charlie G. Graham, and in fraud of the verbal stipulation and agreement between the parties in settlement of their property rights; and under which said Mattie Graham was to use and occupy the house and real estate, pay the taxes thereon and keep the same in repair, as long as she resided in the town of Gurdon; that Mattie Graham thereafter conspiring and acting with other persons unknown to Charlie Graham, and without his knowledge, consent or authority, prepared an alleged deed and forged the name of Charlie G. Graham to same, purporting to convey the house and real estate to her for $1 and other good and valuable considerations, and that said false and forged deed was secretly and without the consent or authority of said Charlie G. Graham placed on record; that Mattie Graham thereafter, without the knowledge and consent of Charlie G. Graham, executed a warranty deed purporting to convey the house and real estate to Katie Newton for a cash consideration of $470; that the deed was not dated, but was acknowledged before W. E. Haynie, a notary public, on June 27, 1932, and thereafter recorded; that Katie Newton, on May 11, 1933, executed to Lloyd C. Newton, her son, for a consideration of love and affection, a certain warranty deed purporting to convey the

property to him; that on July 21, 1937, for a consideration of $1 and other considerations, Katie Newton executed a warranty deed to Mrs. Ella Mae Newton, and that this deed is on record; that Lloyd C. Newton died intestate several years since, leaving as his sole and only heirs at law, Ella Mae Newton and Anna Newton, his daughter, nineteen years old, and Billy Estes Newton, a son, six years old, and Lloyd Newton, Jr., a son, eight years old; that Mattie Graham has since moved away from the town of Gurdon and is now a nonresident of the state; that Charlie G. Graham who had not lived in the town of Gurdon for several years, recently found out that the defendants herein were holding the house and real estate in Gurdon under a claim of title derived under the false and fraudulent deed of Mattie Graham. He prayed that said false and forged deed be set aside and canceled as a cloud on his title, and that the alleged false and fraudulent decree, under which said deed purports to be executed, be canceled, set aside and held for naught; that the deeds from Mattie Graham to Katie Newton, and from Katie Newton to Lloyd C. Newton, and from Katie Newton to Mrs. Ella Mae Newton be canceled and set aside as a cloud on Charlie Graham's title; that the title to said property be decreed in Charlie G. Graham; and that the court further order and decree that the defendants account to Charlie G. Graham for the rent on said property and costs.

The appellees answered denying each and every allegation contained in the complaint and set up other defenses for the claim, and specifically denied any fraud practiced on the Clark chancery court or on the plaintiff, Charlie G. Graham, and specifically deny that any fraud or forgery was practiced.

Ella Mae Newton filed a cross-complaint against her co-defendants, Mrs. Katie Newton, Anna Newton, Billy Newton, and Lloyd Newton, Jr.; alleging that the deed from Katie Newton to Lloyd C. Newton was the result of a mutual mistake; that the defendants Annie Newton, Billy Estes Newton, and Lloyd Newton, Jr., are the sole and only heirs of Lloyd C. Newton, deceased.

The minor defendants answered denying each and every allegation in plaintiff's complaint. An amended and substituted answer was filed for the minors.

The lower court found that there was no fraud practiced on the court or on the appellant, and entered a decree in favor of Mattie Graham and others. From this decree Charlie G. Graham prosecutes this appeal.

The parties entered into the following stipulations:

"It is stipulated and agreed by and between counsel for plaintiff and counsel for defendant and the guardian *ad litem*, that the records in this case, and including the entries in the judge's docket, the original decree, the original deeds be considered in evidence and read in evidence before the court and embodied in the record in this case.

"It is further stipulated and agreed by and between counsel for plaintiff and counsel for defendant and the guardian *ad litem* in this case, that the page from the judge's docket containing the original entries in the handwriting of Judge C. E. Johnson, the chancellor of this district at that time, and ordering that the divorce be granted on the cross-complaint on the grounds of indignities, and further stating that the property rights were settled between the parties according to stipulation and further providing that the plaintiff, Mattie Graham, be awarded $30 a month alimony.

"It is further stipulated and agreed that the subsequent order made in this case reflecting the hearing on the petition to set aside the previous order for alimony appears in the handwriting of Judge P. P. Bacon, the then chancellor of this district, and that the same was heard and handed down on April 4, 1933, as shown by the original entry in said docket."

The final decree and deeds above mentioned were introduced in evidence. The decree showed that a divorce was granted to Charlie G. Graham on his cross-complaint because of indignities offered him by Mattie Graham that rendered his condition in life intolerable. It reduced the alimony which the court order required Charlie

G. Graham to pay to her from $50 a month to $30 a month, and the court further found that the home owned by Charlie G. Graham, or his equity in it, should be deeded to Mattie Graham.

The plaintiff, Charlie Graham, testified in substance that the chancellor granted him a divorce, and that it was agreed between him and his wife, Mattie Graham, that Mattie Graham was to have the home place in Gurdon as long as she wanted to stay there and make it her home; she was to keep the property up and pay the taxes; he turned over to her the household goods and personal property worth between $1,500 and $2,000, turned over to her absolutely; that he did not make an agreement that he would deed the house to her, and was never a party to any such stipulation; never did agree to the decree that was introduced in evidence; there was not any equity in the property, he was the sole owner of it; he had just spent $1,800 on the place a short time before; had $4,500 invested; it was a six-room house, bath, sleeping porch, wash house, electric lights, and bath fixtures complete; he never executed any such deed as the one on record; he was a locomotive engineer on the Missouri Pacific and was working out of Little Rock; at the time the deed is said to have been signed by him, he was working between Texarkana and Little Rock; could not have left Texarkana and come to Arkadelphia on the day the deed purports to have been signed; he testifies at some length about what he was doing and why he could not have been in Arkadelphia at the time the deed purports to have been signed; he went to California and stayed there in 1934 and 1935, came back in the fall of 1935 and was over at Nashville practically ever since under the care of Dr. Hopkins; got back to Gurdon about the first of the year and Mrs. Newton told him she had charge of his old property. Mr. Lookadoo represented him in the divorce case; later, after Judge Bacon became chancellor, there was a petition filed to set aside the allowance of alimony; the allowance of $30 a month was set aside; that Mr. Lookadoo and Mr. Carrigan represented him in these proceedings.

Mr. John H. Lookadoo testified that he was one of the attorneys representing Charlie G. Graham in his divorce suit. Mr. Ed Haynie or Mr. R. W. Huie, or both of them, represented Mrs. Mattie Graham. When Mrs. Mattie Graham filed the second suit he filed a cross-complaint for Charlie G. Graham against her for indignities. Charlie G. Graham was granted a divorce on cross-complaint. The judge's notation on his docket states that the property rights were settled according to stipulation. There was never a written stipulation, it was verbal; that he never saw the decree purporting to have been entered in the divorce suit, and ordering Charlie G. Graham to deed his equity in his property to Mattie Graham; he did not dictate the decree or have it prepared under his supervision. Mary C. Grayson was his secretary at the time and she was not authorized to prepare this kind of decree; it is not the decree that he dictated; his recollection is that Mrs. Graham was to have the whole place as long as she lived, but he stated that that recollection might be influenced by talking to other parties since that time; he is sure he never saw this deed and did not prepare or dictate it; he said: "I don't recall anything about the deed." He said it had been six or seven years ago, and he is sure the deed was not written by him; does not think the divorce decree was read at all at this hearing. The court set aside the alimony order. In his opinion the decree was prepared in his office, looked like his paper, and as far as the precedent for divorce is concerned, it sounds very much like one he usually wrote; Mrs. Grayson always wrote the decrees when they were not contested, in divorce cases; this case was virtually settled before the trial; it was not at that time a contested case; he knows of nothing that would prompt Mrs. Grayson to do anything except the right thing; she was on good terms with Mrs. Graham as far as witness knows; Mr. Graham was always kind and cordial to her, and she was to him; does not know a "thing on earth" about the deed; his recollection is that she was to have the property as long as she lived; was not present when the deed was handed by Ed Haynie to

Mrs. Mattie Graham; knows nothing about it; does not remember Charlie G. Graham ever coming to his office at night.

Mr. C. W. Spruell testified in substance that he had the original train sheets showing the engines pulling the trains, and the trips made by them between Texarkana and Little Rock. Charlie G. Graham was engineer on the engine leaving Texarkana at 6:10 p. m. on the 18th; arrived at Little Rock at 1 a. m. on the 19th; the same engine leaving Little Rock at 2:55 on the 19th, arrived at Texarkana at 10:30 p. m. Train sheets were made by witness who was the train dispatcher and the only records he has with reference to the runs referred to. The train sheets were then introduced. He then gives the dates that Charlie G. Graham left his engines.

The following stipulation was then entered into:

"It is stipulated and agreed between counsel for plaintiff and counsel for defendant and the guardian *ad litem,* that the alleged deed from C. G. Graham to Mattie Graham in question in this case was brought to the office of Floyd Ward, circuit clerk and recorder for Clark county, Arkansas, by Lucius Newton, and was filed in the office to be recorded by him on August 1, 1932, at 11 a. m., and that after recording the deed was returned to Lucius Newton at Gurdon, Arkansas.

"It is further agreed that Lucius Newton is at this time confined in the state penitentiary, having been convicted of the offense of murder in Clark county circuit court."

Mr. Steve Carrigan testified in substance that he was called into the case of *Mattie Graham* v. *Charles Graham* to assist Mr. Lookadoo to set aside the allowance of alimony; that he and Mr. Lookadoo prepared the petition, and the petition did not set out any part of the former order or decree except as to the question of alimony, and the petition was filed under allegations of immoral conduct on the part of Mattie Graham; was present at the hearing and examined the witnesses before Judge Pratt P. Bacon, the then chancellor; they never had the

original decree or any of the original papers at that hearing, and the only record of the former decision they had was the judge's docket, entries made by Judge C. E. Johnson, chancellor before Judge Bacon, who awarded $30 a month alimony to Mrs. Graham.

The gravamen is the alleged misconduct of Mattie Graham in procuring and having entered of record a spurious decree—one differing materially from the actual judicial order. If, in fact, the decree was that of the court, rendered at a time and in circumstances when jurisdiction attached, the deed, in so far as the rights of Chas. G. and Mattie Graham are concerned, is unimportant. With respect to innocent purchasers a different rule applies. If Chas. G. Graham was directed by the court to deed the property to Mattie Graham, and there was no timely appeal from such order, title would vest without further formality, the deed being only the evidence or muniment of that which had been done. Also, if the court ordered execution of the deed, and there is record of the execution of such deed conformable to the decree, a presumption would arise that the defendant and cross-complainant had complied with terms of the decree.

In view of the entire record we cannot say that the chancellor's conclusions as to authenticity of the decree were erroneous. The party seeking to have a judgment vacated or opened must establish the fact relied upon by clear, strong, and satisfactory proof. 34 C. J., p. 358, § 573.

Since we must hold with the chancellor on the validity of the decree, it follows that in the absence of clear, strong, and satisfactory evidence that the deed was a forgery, appellant must also be held to have failed in that respect.

The decree is affirmed.