NORWOOD *v.* HEASLETT.

4-9375                                    235 S. W. 2d 955

Opinion delivered January 29, 1951.

*Collins & Garner, Shaw & Spencer* and *E. K. Edwards,* for appellant.

*Gordon B. Carlton* and *Byron Goodson,* for appellee.

GEORGE ROSE SMITH, J. This is an action by the devisees of B. S. Petefish to set aside a sale at which lands of the estate were sold to pay debts. Appellant Norwood was the purchaser at the sale, and the other appellants are his immediate and remote grantees. The chancellor found that Norwood and the administrator of the estate had been guilty of fraud in inducing the probate court to order the sale. The decree declared the

sale void, canceled the various deeds to the appellants, quieted title in the appellees, and gave money judgments for the value of timber cut by three of the appellants.

Petefish died on February 3, 1934. His will, probated in the following month, devised his real estate to his widow for life with remainder to the five appellees, who are the testator's grandchildren. When the will was probated the court appointed W. E. Jones as administrator. Mrs. Petefish elected to renounce the will and take dower. Several creditors filed claims against the estate, and the process of administration lasted for about seven years. In September of 1940 the assets that then remained, consisting of 516 acres of unimproved land, were sold by Jones pursuant to the order now under attack. Jones accounted for the proceeds of sale and filed his final settlement, which was approved. There were no further proceedings until this suit was filed in 1949.

The record and the briefs are long, but we deem three questions to be controlling.

I. The chancellor found that Jones as administrator and Norwood as attorney for Mrs. Petefish practiced a fraud on the probate court in obtaining the order to sell the real estate to pay debts. The chancellor concluded that the personal property had actually been sufficient to pay all debts and that the land had been needlessly sold. It was found that when Jones obtained the order of sale in 1939 the personal property was insufficient to pay the remaining claims only because Jones had previously made two illegal disbursements. First, in 1934 he had paid $101.70 to redeem the lands from a forfeiture for the 1933 taxes; and second, in 1936 he had paid Mrs. Petefish her statutory allowance of $300 even though, as the chancellor found, the value of the personal property amounted to only $213.73. The funds disbursed by Jones in excess of the value of the personal property had come from the proceeds of timber sold under court order in 1934. The chancellor held that these two expenditures were illegal and that had they not been made there would have been no need to sell the lands

to pay creditors. Norwood's connection with the matter lay in the fact that when Jones .gave notice of his intention to apply for an order of sale Norwood filed for Mrs. Petefish an intervention by which she consented that the sale might be made free of her dower.

We think the chancellor erred in finding that the sale was induced by fraud. This is not an attack launched in the probate court under Ark. Stats. 1947, § 29-506; it is an independent suit in equity to set aside the order of sale. Of course a court of equity may set aside a judgment at law for fraud, but that fraud cannot consist of false actions or testimony the truth of which was in issue in the earlier case. It must be fraud in the procurement of the judgment, such as deception that keeps the adversary away from court or an attorney's wrongfully assuming to represent a party and conniving at his defeat. See *Alexander* v. *Alexander,* 217 Ark. 230, 229 S. W. 2d 234, for a review of the authorities.

Here the asserted fraud was not of this nature. Admittedly Jones had paid $101.70 to redeem the lands from the 1933 tax sale, but that payment was in obedience to an order of the probate court entered in 1934. Whether the administrator should have made this payment was the precise issue before the court when the order was made. Similarly, Jones paid the widow's allowance when ordered to do so. Whether the personal property was sufficient to justify the full payment was an issue the probate court had to decide in directing that the payment be made. One of these disbursements was made in 1934 and the other in 1936. It was not until 1939 that Jones represented to the court that the lands were needed for the payment of debts. We are not convinced that Jones perpetrated a fraud on the court by failing to attack the earlier transactions, but in any event the exact issue before the probate court was whether the personal property was sufficient to satisfy all claims. If the deliberate action of the probate court is subject to revocation in equity upon allegations such as these no one can rely upon the integrity of probate sales, for

fear that the issues may be retried in chancery a decade later.

II. It is insisted that Norwood's purchase should be set aside because he was Mrs. Petefish's attorney and was therefore an ineligible buyer. If Mrs. Petefish had raised this question in a timely manner we should unhesitatingly agree that Norwood violated his fiduciary duty by assuming a position in which his duty to his client conflicted with his personal interest. *Wright* v. *Walker,* 30 Ark. 44. But in the many years since the sale Mrs. Petefish has never questioned the transaction. Norwood represented the widow alone, whose dower interest was wholly separate from the rights of the appellees as devisees. Even though he should not have bought land in which his client had an interest, of what concern is that to these appellees? Norwood represented neither them nor Jones; he owed them no fiduciary duty. If he had not bought the property no doubt some stranger would have, and it is not contended that the appellees' interest could not have been sold to a stranger if necessary to pay debts of the testator. As far as the appellees are concerned, Norwood was a stranger.

Complaint is also made of the fact that soon after receiving the administrator's deed Norwood sold the land to appellant McMillan, who was one of the appraisers named in the order of sale. We have held that one who acts as an appraiser can acquire only a voidable title by purchasing at the sale. *Brown* v. *Nelms,* 86 Ark. 368, 112 S. W. 373. But here the appraisement was not a factor in the 1940 sale. The land was first offered at public sale in 1939, but there were no bidders. Pursuant to the statute then controlling, Pope's Digest, § 162, the court ordered that the property be sold a year later free of the appraisement. Thus McMillan's appraisal had no bearing on the second sale, and we can see no reason why he should not be permitted to buy from the successful bidder.

III. Thomas T. Heaslett, the youngest of the appellees, reached the age of twenty-one less than two years

before this suit was filed, and he insists that he is entitled to redeem the lands from a sale for the 1934 taxes. Ark. Stats., § 84-1201. Jones paid the 1933 taxes, but the land forfeited to the State for non-payment of the 1934 taxes. The administrator's sale was expressly made subject to these taxes. After Norwood bought the property he redeemed it from the State, under Ark. Stats., § 84-1219. Such a redemption is a mere payment of taxes and does not purport to convey title. *Pyburn* v. *Campbell*, 158 Ark. 321, 250 S. W. 15. Hence all that Norwood did was to pay the back taxes. He and his grantees are not relying on a tax title to cut off the rights of Thomas T. Heaslett; so the statutory right of redemption is inapplicable.

The decree is reversed and the cause dismissed.

GRIFFIN SMITH, Chief Justice, and McFADDIN, J., dissent.