LANE v. RACHEL.

5-3553                                    389 S. W. 2d 621

Opinion delivered May 3, 1965.

*Shelby R. Blackmon, J. Fred Jones;* for appellant.

*Hall, Purcell & Boswell,* for appellee.

FRANK HOLT, Associate Justice. Appellants brought this action to rescind a sales contract, cancel a deed, a note,

and a mortgage, and for the recovery from appellees of the amount paid on the purchase of a dwelling. The house was sold to appellants by the builder and owner, appellee Marshall Rachel, through his agents, appellees Thomas and Carlisle. In the alternative, appellants sought damages in the amount of $14,000.00. The appellants alleged that appellee Rachel was grossly negligent in the construction of the house and that the appellees made deceitful and fraudulent representations in connection with the sale of the house. The appellees filed an answer asserting only the affirmative defense that the house was built according to F.H.A. specifications. In resolving the issues in favor of the appellees, the chancellor held that the appellants had failed to prove any negligence or fault on the part of appellee-builder and that the damages to the house were beyond his control.

For reversal appellants contend that appellee Rachel, the builder, "was guilty of gross negligence and constructive fraud in the design and especially in the construction of the footing for the foundation of the house;" that the representations of appellees Rachel and Carlisle "as to the adequacy of the foundation and the quality of the house * * * amounted to fraudulent misrepresentations;" and that the decree of the chancellor was against the preponderance of the evidence. Since these contentions are so closely related and intermingled, we discuss them together.

In August 1961 appellants purchased the house in question from appellee Rachel and his wife for $17,500.00. They made a substantial down payment and regular monthly payments until the trial of this cause in September 1964. Appellee Carlisle, as sales agent for the owner and builder, appellee Rachel, sold the house to the appellants. When Carlisle showed them the house, appellant Lane noticed that the house was prefabricated or precut and the walls of the house appeared thinner than usual. Upon inquiry the sales agent represented that the house was constructed so that none of the weight rested on the interior walls of the house. The purchaser, Lane, also noticed there were fewer pillars underneath

the house than he expected to see and the agent, Carlisle, assured him that not as many pillars were needed as usual since all the weight of the house was on the outside walls. Lane testified: ''I asked him then if this be the case, is there an adequate foundation to hold all this weight which is on the outside walls and he assured me that it was.'' Later Lane talked directly to Rachel, the owner and builder, about it. Lane testified: ''* * * we again asked Mr. Rachel the same questions and he assured us the same thing. The weight resting on the outside walls required fewer pillars underneath the house to hold the weight of the interior walls, plus the fact that there was an adequate foundation to support all this weight that was on these walls.''

The appellants moved into the house the first part of September 1961 and about two months later they noticed the walls were beginning to crack on the west end and the front of the house. The house was built on a slope with the west end on the lower part of the slope. The appellants made an unsuccessful complaint to appellees. The house continued to develop cracks and the following spring appellee Rachel attempted to correct them by putting additional footings under the west end. This did not correct the defects and a few months later appellee Rachel removed the bricks from the west part of the house and replaced them. By this time the sheetrock in the bedrooms on the west end had ripped apart and there were cracked places in the combination kitchen and den extending into the living room. On the north side of the house the bricks had separated at the top and the brick wall had moved one inch from the molding. The floor of the den had dropped from the baseboard three-fourths of an inch and the brick was pulled away from the entrance of the front door for a distance of approximately one inch. There was other damage to the house, including the fact that it had noticeably shifted down-slope. The testimony of appellant Lane as to the representations of appellees that the foundation was adequate to support the house and that the dwelling became uninhabitable was corroborated by his wife. A structural

engineer, Mr. Dickinson, also corroborated them as to the condition of the house.

When the F.H.A. learned of appellants' plight the agency wrote to them: "We suggest that a qualified structural engineer be employed to design a foundation which will be adequate to support the dwelling." It was from Dickinson's inspection that the appellants first knew why the foundation was inadequate. According to him, and it was undisputed, the subsoil was expansive clay and an adequate foundation required a much deeper footing; the concrete footing had not been poured into forms and: "That the footing across the west side had been poured virtually on top of the ground, the original ground, and that the ground on the outside of the footing had been filled so that it was perhaps a foot above the original ground as inside, underneath the house, so that any water underneath the house couldn't get away. It had been ponding underneath there. * * * This footing was poured on top of ground that had roots in it. No attempt was made to dig down far enough to get to completely undisturbed material. * * * The dirt had been scraped out more or less in a half moon shape and the concrete poured in with the top of the concrete flush with the top of the original ground and then the foundation wall came up from that. * * * there is hardly a door in the house that will close. * * * The west end of this house is down perhaps three inches or three and a half inches." He also testified that the appellee, Rachel, in constructing the house had not met the F.H.A. minimum requirements with respect to the depth of the footing and the drainage underneath the house.

Appellee Rachel's main defense is that he relied upon F.H.A. approval. He contended that he was not aware that the subsoil was of the expansive clay type which expanded and contracted according to wet or dry weather and, further, that it was not customary in local building construction to take sampling of the subsoil. Consequently, it is asserted that the assurances appellees gave concerning the foundation were not fraudulently made. Rachel acted as his own architect in preparing

and designing the plans and specifications of the footing and foundation of the house he built and sold to appellants. In the specifications submitted to the F.H.A. by him the soil was described as "sandy clay". He did not test the soil or have it tested and it was after the present controversy arose that he discovered the soil was "expansive clay". He failed to dig a rectangular ditch and construct a form for the foundation footing as he had specified in the design submitted to the F.H.A. Representatives of the F.H.A. admitted they never inspected the footing. The testimony of appellants as to the positive assurances by the appellees regarding the foundation of the house and the negligent construction of the footing is undisputed. In fact, the sales agent, appellee Carlisle, did not testify. We think the evidence is clear and convincing that the appellants should prevail in the case at bar.

It is well settled that when a purchaser is fraudulently induced to purchase property by a vendor's representations, the purchaser has an election of remedies, one of which is to rescind the contract and recover the amount paid by returning or offering to return the property to the seller. *Sullenberger* v. *O'Lee,* 209 Ark. 798, 192 S.W. 2d 543 and *Kotz* v. *Rush,* 218 Ark. 692, 238 S.W. 2d 634.

To rescind a contract based upon fraud, it is not necessary that actual fraud exist. It is well settled that representations are construed to be fraudulent when made by one who either knows the assurances to be false or else not knowing the verity asserts them to be true. *Fausett & Co.* v. *Bullard,* 217 Ark. 176, 229 S.W. 2d 490; *Maurice* v. *Chaffin,* 219 Ark. 273, 241 S.W. 2d 257. In C.J.S., Fraud, § 2, p. 211, constructive fraud is succinctly defined as "a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others * * * *Neither actual dishonesty of purpose nor intent to deceive* is an essential element of constructive fraud." Citing *Stewart* v. *Clark,* 195 Ark.

943, 115 S.W. 2d 887 and *Levinson* v. *Treadway*, 190 Ark. 201, 78 S.W. 2d 59. [Emphasis added]

In the case at bar it is undisputed that the appellants relied, to their detriment, upon the statements and assurances made to them by the appellees and these statements proved to be untrue. Appellees' lack of knowledge of these material representations asserted by them to be true is no defense nor can liability be escaped by their good faith in making the representations.

We are also of the view that the appellee, Rachel, was negligent in the construction of the house with respect to the footing for the foundation. This is true from the undisputed evidence, including the fact that there was insufficient compliance with the minimum F.H.A. requirements as to the footing and drainage.

We have also held that if one of two innocent parties must suffer, the burden must be borne by the one who induced the loss. *Snuffy Smith Motors, Inc.* v. *Universal C.I.T. Credit Corp.*, 236 Ark. 954, 370 S.W. 2d 808. It must be said that the appellees' conduct and assurances induced the loss suffered by the appellants in the case at bar.

The decree is reversed and the cause remanded for the entry of a decree not inconsistent with this opinion.