ARKANSAS STATE HIGHWAY COMM. *v.*
LILLIE D. CLEMMONS ET AL

5-4534                                    428 S. W. 2d 280

Opinion delivered June 3, 1968

*Thomas B. Keys* and *Billy Pease,* for appellant.

*Dale L. Bumpers,* for appellees.

GEORGE ROSE SMITH, Justice. On October 3, 1963, the State Highway Commission filed an action to condemn 8.67 acres of the appellees' land, to serve as part of the right-of-way for Interstate Highway 40. On February 7, 1964, the case was settled by the entry of a consent judgment awarding the landowners $13,300 as just compensation for their land. Nineteen months later the appellees filed the present complaint to set aside the consent judgment for fraud in its procurement. They assert that the Highway Department, by its agents and attorneys, falsely represented that it would construct a culvert under the highway of sufficient size to enable the landowners to move their cattle and machinery back and forth from one side of the highway to the other, their farm having been cut in two by the controlled-ac-

cess highway. This appeal is from an order sustaining the charge of fraud and setting aside the consent judgment. Such an order is final and appealable. *Norman* v. *Cammack,* 105 Ark. 121, 150 S. W. 563 (1912).

The controlling principles of law are not in dispute. The appellees had the burden of showing that the judgment was obtained by fraud. *Karnes* v. *Gentry,* 205 Ark. 1112, 172 S. W. 2d 424 (1943). The charge of fraud must be sustained by clear, strong, and satisfactory proof. *Graham* v. *Graham,* 199 Ark. 165, 133 S. W. 2d 627 (1939). In explaining why such a clear-cut case must be made by one who attacks a judgment we have often used this language: "The statute to vacate judgments by this proceeding is in derogation not only of the common law, but of the very important policy of holding judgments final after the close of the term. Citizens must have some confidence in the judgments of our judicial tribunals, as settlements of their controversies, and there should be some end to them. Unless a case be clearly within the spirit and policy of the act, the judgment should not be disturbed." *Hardin* v. *Hardin,* 237 Ark. 237, 372 S. W. 2d 260 (1963).

Fraud that entitles a party to impeach a judgment must be extrinsic of the issues tried in the case and cannot consist of fraudulent acts or testimony the truth of which was or might have been at issue in the case. It must be a fraud practiced upon the court in the procurement of the judgment itself. Ark. Stat. Ann. § 29-506 (Repl. 1962); *Alexander* v. *Alexander,* 217 Ark. 230, 229 S. W. 2d 234 (1950). Even though the fraud that vitiates a judgment may be constructive rather than actual, constructive fraud is nonetheless a species of wrongdoing. It is a breach of a legal or equitable duty, which the law declares to be fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *Arkansas Valley Compress & Warehouse Co.* v. *Morgan,* 217 Ark. 161, 229 S. W. 2d 133 (1950); *Levinson* v. *Treadway,* 190 Ark. 201, 78 S. W. 2d 59 (1935).

The appellees' proof, tested by the controlling rules of law, falls decidedly short of establishing actual or constructive fraud on the part of the Highway Department. The principal point in dispute concerns the size of the culvert under the highway. That underpass, as actually built, was ten feet wide and twelve feet high. The appellees insist that the dimensions of the culvert should have been just the opposite—twelve feet wide and ten feet high—and that essential farm machinery cannot be moved through the narrower corridor.

C. A. Clemmons, one of the appellees, took the lead in negotiating the settlement with the Highway Department. C. A. and his son Frank testified that after the condemnation suit was filed they went to the office of the Department's resident engineer in Clarksville to learn the size of the culvert that was to be provided for the landowners. They talked to an assistant engineer, whose name they were unable to remember and who was not produced as a witness in the case. The two Clemmonses testified that the assistant engineer showed them the Highway Department's plans, which described the proposed culvert as being twelve feet wide and ten feet high.

C. A. Clemmons first determined the actual dimensions of the concrete culvert when its construction was commenced. "It was there at the house, and I saw it." He made no protest to the Highway Department, however, until some time after the culvert was completed. He testified that he talked to a succeeding district engineer, J. F. Price, who said that a mistake had been made in the construction of the culvert, which should have been twelve feet wide and ten feet high. Frank Clemmons gave similar testimony.

The appellees called Price as their witness, but he did not corroborate their testimony. He testified that he had checked the plans and that they specified a 10-foot width and a 12-foot height for the culvert. He positively denied having said that a mistake had been made.

E. W. Smith, the resident engineer at the time of the trial, testified for the Highway Department. He produced a copy of the original plans, which showed that the culvert was designed to be ten feet wide and twelve feet high—just as it was built. Smith described the care with which he had checked pertinent records to be sure that the plans had not been changed. There is no sound basis for questioning the authenticity or accuracy of the set of plans that were produced by Smith and received in evidence. They effectively rebut what was really the key testimony for the appellees; that is, the Clemmonses' statement that an unidentified assistant engineer showed them a set of plans with the culvert's dimensions reversed. We should add that the specifications for the culvert are set out in the plans in such a way that a layman could easily make a good faith mistake in determining the proposed width and the proposed height.

It will be seen from our summary of the evidence that there is no sound basis for a finding that the Highway Department was guilty of actual or constructive fraud in agreeing to construct an underpass for the landowners. There is in the record certain testimony going to show that the approaches to the concrete floor of the underpass were so poorly built that they were washed out by surface water produced by heavy rains. There is, however, no proof that the Department perpetrated a fraud upon the condemnees by falsely promising to construct and maintain permanent approaches to the underpass.

It is fair to say that the appellees' evidence goes to indicate, at the very most, that the Clemmonses understood that they had a certain agreement with the Highway Department about the promised underpass and that by mistake the Department failed to construct the underpass in conformity with that agreement. Even so, the proof fails to show that the Highway Department employees were guilty of actionable fraud, and the appellees are prohibited by the Constitution from suing the State for breach of contract.

Reversed and remanded for the reinstatement of the consent judgment.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I disagree with the result reached by the majority because this court should not weigh the evidence offered. It should only determine whether there is evidence to support the findings of the trial judge. He made specific findings that:

(1) Appellant, by its attorney, resident engineer and district engineer, fraudulently induced appellees to enter into this consent judgment by falsely representing to them that an underpass suitable for the movement of farm machinery and cattle of appellees would be constructed and maintained by appellant.

(2) Appellant knew that the underpass as constructed would not be adequate for the movement of either farm machinery or cattle.

I feel that there are facts and testimony worthy of consideration which support the court's order, in addition to the brief summary in the majority opinion. While neither of the Clemmonses claim that the assistant engineer made any statements or representations to them other than by showing them these plans, C. A. Clemmons testified that he stated to the assistant engineer that if the dimensions were as shown, he could "get by with the machine." Neither of these witnesses were the least bit equivocal about the dimensions shown on the plans. C. A. Clemmons understood that the highway department was going "to fix it at the end of the culvert." Neither C. A. nor Frank Clemmons says that anyone told them on that visit anything about approaches to be built at the ends of the culvert to provide access thereto from the several tracts. Frank Clemmons says, as he recalls, the plans did not show anything in regard to these approaches. C. A. Clemmons testified that Little,

the resident engineer on this construction, told him that appellant would place rock at the culvert ends so that appellees would have access to use the culvert. The time of the alleged making of this statement is not clear. This witness testified that he then told Little that the branch or creek which would run through the culvert would wash the rock out after the first big rain, but Little responded that the rock would be ''rolled in.'' After the judgment was entered, the culvert was constructed with dimensions of 10 feet in width and 12 feet in height. The highway department caused a road to be graded at each end of the culvert which permitted passage therethrough. C. A. Clemmons says that he again told the engineer that this road would be washed out by the first rain thereafter. The base of the culvert was built below the bed of the creek flowing through it. C. A. and Frank Clemmons both state that, because of the creek flowing through the culvert after rains, it was soon filled with mud and debris to such an extent that vehicles and farm equipment could not be moved through it. According to them, cattle can only be moved through the culvert in dry weather. The culvert is too narrow for some of appellees' farm equipment to pass through.

C. A. Clemmons and Frank Clemmons also testified that they went to see John F. Price, district engineer of the highway department at Russellville, after the culvert was constructed, and that he admitted that the culvert was supposed to be 12 feet wide and 10 feet high, but that, through a mistake, the dimensions were reversed in construction. Price was called as a witness by appellees, but he testified that the culvert was constructed according to the plans and that he did not make the statement attributed to him by C. A. Clemmons. In his opinion, however, the culvert was designed to afford a passageway for vehicles and livestock. He agreed that dropoffs at the ends of the culvert, caused by scouring from the flow of water, would make the use of the culvert by vehicles and cattle difficult and that the rock was placed at the end to provide access to the culvert.

W. C. White owned a shale pit on the Clemmons farm to which he would now have no access except through this culvert. When he learned of the proposed highway construction he went to see Resident Engineer Little who advised him that the proposed culvert would be 8 feet high by 8 feet wide, but thought it might be made 12 feet high by 12 feet wide, and later told him that it would be. Little also promised that an approach would be put on both ends so that "it wouldn't be bothering" White. There is no evidence that this assurance was ever conveyed to any of the appellees. White says that he has never been able to use the culvert.

E. W. Smith, presently resident engineer for appellant in the area, testified that the culvert was built in conformity with the plans and that they showed no rock or paved aprons. He admitted that his predecessor advised that rock was placed at each end because the landowner had been promised the use of the culvert as a cattle pass.

Appellees proceeded under the fourth clause of § 29-506 [Ark. Stat. Ann. (Repl. 1962)] authorizing a trial court to vacate its judgment after the expiration of the term at which it was rendered for fraud practiced by the successful party in obtaining the judgment.

The extrinsic or collateral fraud for which a judgment may be vacated may consist of fraud or deception practiced by the one party keeping the other away from court or keeping him from asserting a defense or fully presenting his case, without negligence or fault on the part of the moving party. *Alexander* v. *Alexander*, 217 Ark. 230, 229 S. W. 2d 234; *Norwood* v. *Heaslett*, 218 Ark. 286, 235 S. W. 2d 955; *Johnson* v. *Johnson*, 169 Ark. 1151, 277 S. W. 535; *Hempstead & Conway* v. *Watkins*, 6 Ark. 317, 42 Am. Dec. 696. This fraud may be constructive. *Chronister* v. *Robertson*, 208 Ark. 11, 185 S. W. 2d 104; *Kersh Lake Drainage Dist.* v. *Johnson*, 203 Ark. 315, 157 S. W. 2d 39. Neither dishonesty of pur-

pose nor intent to deceive is an essential element of constructive fraud. *Lane* v. *Rachel,* 239 Ark. 400, 389 S. W. 2d 621; *Arkansas Valley Compress & Wholesale Co.* v. *Morgan,* 217 Ark. 161, 229 S. W. 2d 133. It is sometimes called "legal" fraud or "fraud at law" and consists of a breach of either legal or equitable duty, which, irrespective of moral wrong, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *Levinson* v. *Treadway,* 190 Ark. 201, 78 S. W. 2d 59; *Lane* v. *Rachel, supra.* Constructive fraud is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place and the conscience is not necessarily affected by it. *Kersh Lake Drainage Dist.* v. *Johnson, supra.* In that case we quoted from 23 Am. Jur. 756, Fraud & Deceit, § 4, in part:

"* * * Indeed, it has been said that it generally involves a mere mistake of fact. Hence, the terms 'constructive fraud' and 'legal fraud' both connote in certain circumstances, one may be charged with the consequences of his words and acts, as though he had spoken or acted fraudulently, although, properly speaking, his conduct does not merit this opprobrium."

Here, there is evidence Clemmons was deceived without any dishonest intent on the part of anyone. The complaint in the action to take his land stated that the highway would be constructed according to plans on file with the highway department. In order to ascertain the damages to his severed lands, it was necessary that he know these plans. He went to the appropriate source to ascertain them. He relied on the plans shown him, but says that he was told the width of the culvert also. In order to obtain the information, he must of necessity have made the purpose of his inquiry known. Both he and his son state positively that the dimensions shown indicated a culvert width of 12 feet. Appellant did not produce Little, the former resident engineer, or

his assistant to refute the testimony of the Clemmonses. Naturally, appellees relied on the information obtained from appellant in agreeing to the consent judgment. Certainly there was a duty on the part of the highway department, the only source of information, to give correct information upon appellees' inquiry. It is obvious that a lack of communication and means of travel between the several tracts would cause an enhancement of damages to the remaining lands. Appellant does not even contend that appellees would not have a "meritorious defense" to the action, if the judgment is set aside. The trial judge made specific findings that representations were made as to the adequacy of the culvert to provide the desired means of communication and as to the accessibility of the culvert to the several lands. He also found that the construction was not in accord with these representations. I cannot say that his findings are unsupported by sufficient evidence, even though it is not undisputed.

The fact findings of the trial judge are as binding on us as the verdict of a jury would have been. When the law makes the circuit judge the trier of facts in cases in which the constitutional right to trial by jury does not extend, the same presumptions attend his findings as when the issues of fact are tried before him when a jury is waived by the parties. *Schuman* v. *Sanderson*, 73 Ark. 187, 83 S. W. 940; *Matthews* v. *Cargill*, 125 Ark. 136, 188 S. W. 564. This rule applies to proceedings to vacate a judgment after the expiration of the term under § 29-506. *Cady* v. *Pack*, 135 Ark. 445, 205 S. W. 819.

Where there is substantial evidence in support of the finding of the trial court, the same will not be set aside by this court on appeal. *Gazzola & Co.* v. *Savage*, 80 Ark. 249, 96 S. W. 981. The evidence must be given its strongest probative force in favor of the finding of a trial court in law cases. *Inter-Southern Life Ins. Co.* v. *Ransom*, 149 Ark. 517, 232 S. W. 754.

The findings of a circuit judge, when the law makes

him the trier of the facts, are as conclusive on appeal as the verdict of a jury. *Schuman* v. *Sanderson, supra.* On appeal from a law court, the finding of the court on a controverted question of fact is conclusive if supported by substantial evidence. *Ward* v. *Nu-Wa Laundry Cleaners,* 205 Ark. 713, 170 S. W. 2d 381; *Bank of Atkins* v. *Wirth,* 209 Ark. 360, 190 S. W. 2d 445. The reason for the rule is that, in law cases, we only review for errors, unlike chancery cases in which there is a trial de novo by this court. *Matthews* v. *Cargill, supra.*

In an action to set aside a judgment, we must treat as conclusive the findings of the trial court on disputed issues of fact. *Collier* v. *Mississippi Beneficial Life Ins. Co.,* 164 Ark. 54, 261 S. W. 39; *Halliday* v. *Fenton,* 164 Ark. 11, 260 S. W. 961.

In determining the sufficiency of evidence, this court will consider evidence favorable to appellee only. If there is substantial evidence to support a verdict, it will not be disturbed. *Harmon* v. *Ward,* 202 Ark. 54, 149 S. W. 2d 575.

It is only required, on appeal, that the findings of the trial court in vacation of a judgment under § 29-506 be supported by substantial evidence. *O. C. Scroggin & Co.* v. *Merrick,* 176 Ark. 1205, 5 S. W. 2d 344.

The fact that the burden was upon appellees in the lower court to prove certain facts by clear, strong and satisfactory proof or clear and convincing evidence does not change the scope of review on appeal or make the findings of the trial court any less binding where the trial on appeal is not de novo. The quality of proof called "clear and convincing" is something more than a mere preponderance as required in ordinary civil cases, but not beyond a reasonable doubt as required in criminal cases. *In re Estate of Fife,* 164 Ohio St. 449, 132 N. E. 2d 185 (1956); *Cromwell* v. *Hasbrook,* 81 S. D. 324, 134 N. W. 2d 777 (1965); *Aiello* v. *Knoll Golf Club,*

64 N. J. Super. 156, 165 A. 2d 531 (1960); *Child* v. *Child,* 8 Utah 2d 261, 332 P. 2d 981 (1958).

Whether the evidence is "clear, strong and satisfactory" is to be determined by the trier of the facts and is not to be weighed on appeal. In *Graves* v. *State,* 236 Ark. 936, 370 S. W. 2d 806, we said:

"Upon the conflicting testimony the issues of fact were properly submitted to the jury. The appellants are in error in arguing that the State's failure to prove its case beyond a reasonable doubt entitles them to a reversal. The jury must be convinced of the accused's guilt beyond a reasonable doubt, but there is no requirement that the members of this court be similarly persuaded by the proof. Here the test is that of substantial evidence. If the verdict is supported by such proof we are not at liberty to disturb the conviction, even though we might think it to be against the weight of the evidence. *Fields* v. *State,* 154 Ark. 188, 241 S. W. 901."

If this rule is applicable in a criminal case where lives and liberty of appellants are at stake, and where the quality of proof required is even greater, it should be much more appropriate in a civil case at law.

I would affirm the judgment of the trial court.