TUCHFELD v. HAMILTON.

4-6543                                         156 S. W. 2d 887

Opinion delivered December 22, 1941.

*Terrell Marshall,* for appellant.

*Cockrill, Armistead & Rector,* for appellee.

SMITH, J. Joel Tuchfeld died intestate in 1909 seized and possessed of the lot here in question. He was survived by his widow and five children. On February 14, 1929, the widow and four of the children conveyed their respective interests in the lot to H. A. Hamilton. The interest of Gabe, the other child, was sold by the American Southern Trust Company, as his guardian, under the authority of § 7587, Pope's Digest, to H. A. Hamilton who had purchased the other interests. Hamilton paid the same sum for Gabe's interest which he had paid for the other interests, paying altogether, the sum of $10,000.

Hamilton's heir now proposes to sell the lot for $6,000, but the title examiner has questioned the validity of the deed of the guardian to H. A. Hamilton. The deed was held valid by the court below, and Gabe, through his guardian *ad litem,* has appealed from that decree.

The orders of the probate court relating to the interest of the appellant Gabe, who, for many years, has been an insane person, are as follows: On March 30, 1912, the probate court appointed the Union Trust Company as curator of the estate of Gabe (and the other children) as a minor. On December 1, 1917, an order was made finding Gabe insane and committing him to the State Hospital for Nervous Diseases. This order appointed the Union Trust Company as guardian of Gabe's person and estate as a person of unsound mind. On October 31, 1919, the Union Trust Company was discharged upon its petition, and E. G. Levy was appointed curator for Gabe as a minor. In 1921, Levy filed settlement and prayed his discharge, and the American Bank of Commerce & Trust Company was appointed as guardian of the person and estate of Gabe as a minor. On April 17 1925, an order was made reciting that the American

Southern Trust Company, successor to the American Bank of Commerce & Trust Company, as guardian of Gabe, an incompetent adult, had filed a petition praying authority to advance money for his taxes out of the ward's estate. The order was made as prayed. A similar order with reference to taxes, which referred to American Southern Trust Company as guardian of Gabe, an incompetent adult, appears on April 9, 1928, and on March 22, 1928, an order was made in regard to maintenance, which refers to the American Southern Trust Company as guardian of Gabe, an incompetent adult.

These are all the orders appearing in the records with reference to appellant and his estate prior to the sale of his interest in the lot, which was made on April 12, 1929, on the petition of American Southern Trust Company, as guardian of appellant as an insane person.

All persons and agencies acting as guardian had given proper and sufficient bonds. When appellant was adjudged insane in 1917, the Union Trust Company was appointed guardian of appellant as an insane person, but the American Bank of Commerce & Trust Company was appointed guardian of appellant as a minor. He was a minor, but he was also insane, which fact must necessarily have been known to the court and to all parties concerned. This is the only error found in the many orders of the guardianship proceedings. It had no effect upon the management of the estate or the equities of the ward, and there is no allegation or intimation of fraud or duress. The estate has been properly managed and conserved.

Appellant became of age in 1925, and this fact would have terminated the guardianship of appellant as a minor; but it was not terminated. It was continued as the guardianship of an insane person. It was a continuation of the jurisdiction of the probate court, which was lawfully acquired and never released. All the proceedings were upon the assumption that the guardian was acting for an insane adult. The order for the sale of appellant's interest in the lot contains a recital of all the jurisdictional requirements essential to a valid sale.

It recites that it was made upon the petition of the guardian of an adult insane person. It is conceded that Hamilton bought the lot and paid full value therefor upon the faith of this order of sale, and that the sale was duly reported to and confirmed by the court as having been made by the guardian of an adult insane person. It is not questioned that the estate has at all times been protected by a bond as effective for that purpose as it would have been had it recited that appellant was an insane person.

There has been an error in the administration of this estate which apparently escaped notice until detected by a careful title examiner. Such errors should not occur, but they do occur, and the fear of such errors has caused many estates to be sacrificed through the apprehension that the purchaser at a probate sale would acquire a defective title. To remove this fear and to prevent the sacrifice of estates which must be sold under orders of the probate court, Act 263 was passed at the 1919 session of the General Assembly entitled "An Act to render conclusive judgments and decrees of the probate court in guardian's and administrator's sale." This act appears as § 6257, Pope's Digest, and reads as follows: "In all guardian's sales heretofore or hereafter made, the finding and recital in the judgment or decree of the probate court authorizing and ordering any such sale that the guardian or administrator was duly and legally appointed and qualified; that the sale was conducted according to law; and that the facts set forth in the petition entitled the said guardian or administrator to make the said sale, shall be conclusive and binding on all parties having or claiming an interest in the said sale, save upon direct appeal to the circuit court made in such cases as are now provided by law; and such finding and judgment or decree of the probate court shall not be open to collateral attack save for fraud or duress. Provided, that, as to sales heretofore made, all parties having any interest therein shall have twelve months after the passage of this act in which to attack such sales."

This act was intended to give assurance that one might acquire a good title at a probate sale to the end

that estates would not be sacrificed where their sale was required and had been ordered, and it is not questioned that the order pursuant to which appellant's interest in the lot was sold met the requirements of this act, and there being, as we have said, no allegation of fraud or duress, the provisions of this act must be applied to the sale here in question.

Appellant cites and relies upon the cases of *Bank of Rector* v. *Parrish,* 131 Ark. 216, 198 S. W. 689, and *Hastings* v. *United States Fidelity & Guaranty Co.,* 116 Ark. 220, 172 S. W. 1016. But these opinions were rendered prior to the passage of the 1919 act. Other cases in which opinions were rendered subsequent to the passage of this act are cited by counsel for appellant. But that act was not involved and its provisions were not invoked in these cases.

In the case of *Shumard* v. *Phillips,* 53 Ark. 37, 13 S. W. 510, rendered prior to the act of 1919, it was sought to set aside the sale of a minor's land, upon the ground that there had been no confirmation of the appointment of the guardian; but it was held that "Conceding that none was had, it appears that Mrs. Shumard rendered her accounts to and was recognized by the probate court as guardian. She comes, then, within the rule laid down in *Knott* v. *Clements* (13 Ark. 335) and the validity of her appointment cannot be questioned in this collateral attack. *Dodge* v. *Cole,* 97 Ill. 338, 37 Am. Rep. 111."

The Act of 1919 was upheld as a valid enactment in the case of *Day* v. *Johnston,* 158 Ark. 478, 250 S. W. 532. There, a private sale, made by a nonresident who had been appointed guardian for a resident minor, was confirmed, and in upholding that action we said that, although the statutes providing for the appointment of administrators and guardians contemplate that only residents of the state shall be appointed, yet, where the probate court approved the appointment of nonresidents, such order imported the finding that the appointees were qualified and is conclusive on that question upon collateral attack. It was there also held that a private sale of lands of a minor, to provide funds for his education, is not void when confirmed under act 263 of 1919.

In the case of *Dodd* v. *Hopper,* 182 Ark. 24, 30 S. W. 2d 837, it was held that a guardian's sale of a minor's land is void where neither the application therefor nor the court's order showed that the land was the minor's homestead or that there were no debts. After quoting the act of 1919 the opinion states: ". . . But the judgment of the probate court does not recite any of these things. The record in this case shows no judgment or no action of the probate court except there is indorsed on the application a statement that the petition is granted. If the judgment of the probate court had recited the facts above-mentioned in its judgment, the judgment would have been conclusive, but, as it did not do this, the judgment is not conclusive."

Here, the probate order directing the sale contains the recitals required by the 1919 act to render it impervious to collateral attack in the absence of fraud or duress.

The case of *Hart* v. *Wimberly,* 173 Ark. 1083, 296 S. W. 39, is not opposed to this view. There, a minor's homestead was sold under an order of the probate court for the payment of the debts of his ancestor, and it was held that this order of sale was void, for the reason that the probate court was without jurisdiction to make such an order. Not so here. No question of jurisdiction is involved. There appears only an irregularity, which § 6257, Pope's Digest, has cured. The decree of the court below is correct, and it is, therefore, affirmed.