KILLGO *v.* JAMES, EXECUTRIX.

5-2936            367 S. W. 2d 228

Opinion delivered May 6, 1963.

*Clayton Farrar* and *Wood, Chesnutt & Smith,* by *Ray S. Smith, Jr.,* for appellant.

*M. C. Lewis, Jr.,* for appellee.

GEORGE ROSE SMITH, J. In 1949 Charles and Ruby Killgo bought a home in Hot Springs, as tenants by the entirety. In 1954 the couple were divorced by a decree of the Garland Chancery Court. The decree approved a property settlement by which the parties agreed to sell the home later on and divide the proceeds. The property had not been sold, however, when Charles died in October of 1959. His heirs, the appellants, then brought this suit for partition against Charles's former wife, Ruby Killgo Dunn, upon the theory that the property settlement and divorce decree had converted the tenancy by the entirety into a tenancy in common, in which case the plaintiffs would have inherited a half interest in the property upon Charles's death. The chancellor rejected that theory, holding that the tenancy by the entirety had continued in existence, so that at Charles's death the title vested by survivorship in Ruby Killgo Dunn. Mrs. Dunn died pending this appeal; the cause has been revived against her heirs and personal representative.

The principal issue—whether the estate was changed into a tenancy in common—turns upon the construction of this language in the settlement agreement: "It is understood that the decree to be entered herein is to provide that Charlie C. Killgo is to have possession, use and control of the [home], together with the furniture therein, until such time as the parties to this case may agree on a sales price for such, at which time, on such agreement, the proceeds are first to be used to reimburse Charlie C. Killgo for all monies he has paid or will pay on the mortgage on same after date of August 1953, after which the balance of the proceeds is to be divided between the parties hereto equally."

The 1954 divorce decree recited the substance of the paragraph just quoted and concluded by declaring that "the property rights settlement between said parties . . . is hereby approved and confirmed in all particulars." (We should add that at Charles's death there was pending a suit for partition that Ruby had filed in 1957, in which she charged that Charles had violated the settlement agreement by refusing to consider a sale of the property. We do not dwell upon this earlier case, as we think it had no effect upon the title, either directly or by way of an estoppel.)

The chancellor was right in holding that the agreement and decree did not change the parties' estate into a tenancy in common. It will be seen upon reflection that the Killgos, like any married couple in the same situation, had a choice of two courses. First, they could, without affecting the nature of their tenancy by the entirety, have simply agreed that they would attempt to sell the land, with the proceeds to be divided equally. In that case the estate by the entirety, with its characteristic right of survivorship, would undoubtedly continue to exist until a sale was accomplished. Secondly, the Killgos, at least by invoking the chancellor's statutory power over tenancies by the entirety, could have agreed that the estate would immediately become a tenancy in common, thereby utilizing the divorce decree to extinguish the right of survivorship. Ark. Stats. 1947, § 34-1215; *Brimson* v. *Brimson,* 227 Ark. 1045, 304 S. W. 2d 935.

We think it plain that the agreement in the case at bar falls in the first category. We cannot find one sentence or even one word, in the agreement or in the decree, to support the conclusion that the parties had an affirmative intention to bring about an immediate termination of the tenancy by the entirety. It is desirable that titles to real property rest in certainty and stability. For a couple to declare that they will sell a piece of property at some future date and divide the proceeds is not even a roundabout way of saying that they will also become tenants in common at once. The language that the Killgos selected, with the advice of counsel, is perfectly consistent with a desire on their part to leave the estate untouched

until a sale should be completed. We do not feel justified in rewriting the contract by reading into it an additional clause that the parties chose to leave out.

There is a second point in the case. The appellants asked in their complaint that the property be ordered sold and that the proceeds be applied first, in accordance with the property settlement agreement, to recompense the plaintiffs for mortgage payments totaling $1,640 that were made by Charles Killgo after August of 1953, with the remaining proceeds to be divided equally between the opposing litigants. Even though we are holding that the tenancy by the entirety continued in force, there is still the question whether the appellants are entitled to assert a charge against the property for the mortgage payments that are involved.

A majority of the court have concluded, although not upon the same reasoning, that the appellants are entitled to charge the property with the mortgage payments. Justices Ward, Robinson, and Johnson are of the opinion that the tenancy by the entirety was converted into a tenancy in common, in which case the mortgage payments are recoverable as a matter of course under the settlement agreement. Justice McFaddin joins in the majority opinion with respect to the tenancy by the entirety but, for the reasons stated in his concurring opinion, is of the view that the mortgage payments are recoverable. The Chief Justice, Justice Frank Holt, and the writer would affirm the decree.

The decree is accordingly affirmed in part and reversed in part, and the cause is remanded for further proceedings.

McFADDIN, J., concurs; WARD and JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice (concurring). I agree with that part of the Majority Opinion which holds that the entirety estate had not been dissolved at the time of the death of Charles Killgo; but I am of the opinion that Mr. Killgo's estate is entitled to recover the $1,640.00 which he paid after August 1953 to retire the principal indebtedness on the mortgage of the entirety estate.

When Mr. and Mrs. Killgo were divorced they entered into a property settlement agreement which provided:

''It is understood that the decree to be entered herein is to provide that Charlie C. Killgo is to have possession, use and control of the place of the parties . . . together with the furniture therein, until such time as the parties to this case may agree on a sales price for such, at which time, on such agreement, *the proceeds are first to be used to reimburse Charlie C. Killgo for all monies he has paid or will pay on the mortgage on same after date of August 1953,* after which the balance of the proceeds is to be divided between the parties hereto equally.'' (Emphasis supplied.)

The settlement agreement was approved by the divorce decree, and it determined the disposition to be made of the proceeds of the sale of the premises. The Chancery Court held that Mr. Killgo's occupancy of the property required him to pay the taxes, insurance, repairs, and interest on the mortgage indebtedness; that portion of the decree is not questioned. But the Chancery Court held that Mr. Killgo's occupancy of the property also required him to pay the principal on the mortgage indebtedness. That holding is challenged because it is in direct opposition to the terms of the property settlement agreement of the parties (approved by the Court) which specifically recited that on the sale of the property, Mr. Killgo could recover all principal payments he made on the mortgage after August 1953; and these principal payments were definitely established at being $1,640.00.

In *Jones* v. *Jones,* 236 Ark. 296, 365 S. W. 2d 716, the parties to a divorce suit made a property settlement agreement by the terms of which the husband was to make the mortgage payments on the entirety prop-erty until it should be sold; and we enforced the agreement between the parties. So the Jones case is authority for the statement that Mr. Killgo could have enforced the agreement and recovered the $1,640.00 if the sale had taken place in his lifetime. I maintain the property settlement agreement gave Mr. Killgo a *chose in action*

against the property and his former spouse. The fact that the sale did not take place during the life of Mr. Killgo does not prevent the rights of Mr. Killgo from passing to his estate as any other chose in action. In *Smead* v. *Chandler,* 71 Ark. 505, 76 S. W. 1066, Justice Battle said:

"The terms or phrases 'choses in actions' and 'debt' are used by courts to represent the same thing when viewed from opposite sides. 'The chose in action is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay.' " [1]

That a chose in action passes to the estate of the deceased is established by unlimited authority. See C. J. S. Vol. 26-A, Page 533 *et seq.,* "Descent and Distribution" § 8. The Supreme Court of Utah, in the case of Harper's Estate, 265 P. 2d 1005, held that all property rights granted the husband by a divorce decree vested in his heirs, even when his death occurred prior to the time when the decree became absolute. So I maintain that Mr. Killgo's estate received the chose in action for the $1,640.00 and his estate should have a first lien on the property for such amount.

PAUL WARD, Associate Justice (dissenting). In order to make clear my disagreement with the result reached by the majority it is necessary to consider the matter under two headings.

*One.* It is my conviction that when Charles and Ruby Killgo secured a divorce in 1954 after they had entered into a property settlement (approved by the court) according to the terms set out in the majority opinion, the settlement was final and amounted to a dissolution of the estate by the entirety. There certainly can be no doubt that this was the intention of Mr. Killgo, Mrs. Killgo, and the chancellor, and this was definitely true after the time for appeal had elapsed. It must be kept in mind that we are not here dealing with a temporary order such as an order for child support or alimony but we are dealing with property rights that have been fixed and are unchangeable except by agreement of the parties.

[1] For other definitions of chose in action see Black's Law Dictionary.

As I interpret the majority opinion, it rests primarily, if not entirely, on the fact that the chancellor did not use certain "magic words" to dissolve the estate by the entirety. It is conceded, of course, that the chancellor did have power to dissolve the estate by the entirety in this instance because the estate came into being after the passage of Act 340 of 1947 (Ark. Stats. § 34-1215). In my opinion it was not necessary for the chancellor to make a specific finding that he was dissolving the estate by the entirety. I am firmly of the view that the decree in this case dissolved the estate by the entirety just as effectively as if the magic words had been used, and that view is supported by respectable authority.

In the case of *United States* v. *48.9 Acres of Land, etc.,* 85 F. Supp. 133 (W. D. Ark.), this same question arose in connection with condemnation of certain lands at one time held as an estate by the entirety by a Mr. and Mrs. Cox. It appears that they were divorced and had a property settlement which in effect was an agreement to divide the proceeds from the sale of the land. The question presented for decision was whether or not the decree of the chancellor amounted to a dissolution of the estate by the entirety. The court decided that the estate had been dissolved and in my opinion the reasoning for that decision is pertinent and controlling here. Among other things the Court said:

". . . a reference to the divorce decree discloses that the parties themselves did dispose by agreement of the lands held by the entirety, and I know of no reason why that agreement, when approved by the Court in the divorce case, was not valid, and in my opinion, the decree of the Court, based upon the agreement of the parties recited therein, did vest the entire title to the lands in A. J. Cox.

\* \* \*

"It is true that the agreement did not specifically mention such an estate, but the agreement did include the identical lands here involved and it was clearly the intention of the parties to definitely and completely settle

their respective rights and the title to the lands as between them.

＊　　　＊　　　＊

"Each understood the ownership and it was clearly their intention to dispose of the estate by the entirety, which as above stated, could have been done by the execution of a deed, but the parties chose to settle the matter by agreement . . . ."

Incidentally, that estate by the entirety was created before 1947 and so that chancellor had no power to dissolve without the consent of the parties.

To the same effect is the decision of *Sheldon* v. *Waters,* 168 F. 2d 483 (5th Cir. 1948), which interpreted the statute dealing with the dissolution of estates by the entirety in the State of Florida. The District Court, in effect, held that an approved agreement to terminate the estate by the entirety in property held by a man and wife was not operative or effective, but the Circuit Court of Appeals reversed that decision using the following language pertinent to this case:

"We conclude there was some sort of agreement between Mr. and Mrs. Waters, for there was conduct by one inconsistent with the continuance of the tenancy by the entirety, acquiesced in by the other."

*Two.* In my opinion it is immaterial in this case that the land was to be sold when the husband and wife agreed on a price. Any other view would make it possible for either one of them to defeat the entire property settlement by refusing to be agreeable. It can hardly be argued that if one party refused to agree, the other party could not have redress in a court of equity. In this case the wife (whose heirs were awarded all of the land) went into court and asked to have the agreement enforced, seeking only her one-half. This amounted to a recognition on her part that the property settlement was binding on both of them. This was the effect of the holding in the case of *Taylor* v. *Taylor,* 153 Ark. 206, 240 S. W. 6, where the Court said:

"She does not seek to have that decree set aside, but on the contrary seeks to uphold it. It was for her benefit, and she can not consider it valid for one purpose and invalid for another. She must accept or reject it in its entirety."

In the case of *Graham* v. *Graham,* 199 Ark. 165, 133 S. W. 2d 627, it was pointed out that in a divorce suit between Charlie Graham and Mattie Graham, the court ordered the home place to be deeded by the husband to the wife. Apparently the deed had never been executed and in considering this point, the Court said:

"If Chas. G. Graham was directed by the court to deed the property to Mattie Graham, and there was no timely appeal from such order, title would vest without further formality, the deed being only the evidence or muniment of that which had been done."

The above case has been cited with approval in *Person* v. *Johnson,* 218 Ark. 117, 235 S. W. 2d 876, and *Cook* v. *Cook,* 233 Ark. 961, 349 S. W. 2d 809. It is my conclusion, therefore, that it is immaterial that the agreement to sell the property and divide the proceeds had not been carried out in the case under consideration. Based on the reasoning in the cases just cited, chancery court, being a court of equity, will treat that which ought to have been done as having been done.

JOHNSON, J., joins in this dissent.