WOOD *v.* WRIGHT.

5-3423                                                386 S. W. 2d 248

Opinion delivered January 18, 1965.

[Rehearing denied February 22, 1965.]

942

*Kirsch, Cathery & Brown,* for appellant.

*Frierson, Walker & Snellgrove,* for appellee.

JIM JOHNSON, Associate Justice. This appeal involves property rights and attorneys' fees of a wife divorced on the ground of insanity.

Appellee A. D. Wright filed suit for divorce on November 8, 1962, in Greene Chancery Court against his wife, Jessie M. Wright, on the ground of three years separation by reason of her incurable insanity. After appointment of a guardian ad litem, various motions and hearings, and appointment of a guardian by the probate court, appellee filed a "supplemental, substituted and amended" complaint for divorce on July 8, 1963. Appellee alleged, *inter alia,* that the parties were married in 1929 and had not lived together since 1951, that they had no children, that they owned property, that Mrs. Wright was incompetent and had been for more than five years, was admitted to the State Hospital on June 20, 1960, where she has been confined ever since. The complaint asked that appellant Hattie Wood, Mrs. Wright's sister who had been appointed her guardian, defend the suit, that the court grant appellee a divorce, and make other proper orders for the wife's future care and support. Appellant answered, alleging that the parties owned property as tenants by the entirety, some acquired before and some after the adoption of Ark. Stat. Ann. § 34-1215 (Repl. 1962) in 1947, and prayed division of the rents and income from the property acquired before

1947 and partition of the property later acquired, in the event of divorce. Appellant also prayed for one-third of all of appellee's personal property, one-third interest for life in all of appellee's separate real property, dower interest in some hotel property conveyed through a straw man, and for alimony. Appellant also asked for an accounting of all the rents and income received by appellee from the entirety property during the preceding eleven years, since Mrs. Wright first became incompetent. Appellee thereafter filed an accounting for the year 1963 which reflected a net income from the entirety property of $4,853.28 for the year.

In its memorandum opinion of March 2, 1964, the trial court found (1) that proof is sufficient to award appellee a divorce on the grounds alleged; (2) the real property held by the entirety acquired after March 28, 1947, should be partitioned, in kind if possible; (3) appellee would be permitted to continue to rent and manage the real property held by the entirety acquired before 1947, and to pay one-half of the net income to appellant guardian; (4) an accounting of the income from the entirety property would date forward from January 14, 1963, the date an accounting was first asked by appellant; (5) appellant's ward was not entitled as a matter of right to an award of one-third of appellee's separate real and personal property; (6) the ward's financial needs for the present do not exceed $100.00 per month, she has an income as her share from the entirety property of some $2,000 per year and owns property worth in excess of $100,000 and, in addition, in the event the ward outlives appellee she would own in fee all of the entirety property acquired before 1947; (7) ordered appellee to pay $100 per month during their joint lives for the ward's maintenance at the State Hospital, with the court retaining jurisdiction to make such further orders as may be later required. The court found that the fair value of legal services rendered by appellant's attorneys to date was $4,500, that appellee had already paid $1,000 of this plus costs, and because of the ward's independent financial resources appellant, not appellee

should be required to pay from the ward's estate the additional $3,500 attorneys' fee. From orders on these findings comes this appeal.

Appellant's first point urged for reversal is that the chancery court should have awarded appellant one-third of appellee's personal property absolutely and one-third of his individually owned real estate for the ward's life.

Appellee sought his divorce under the eighth cause for divorce in Ark. Stat. Ann. § 34-1202 (Repl. 1962), which provides for divorce following separation because of incurable insanity and specifies how this must be proved, requirements for the lifelong care and maintenance of an insane wife, with retention of jurisdiction by the chancellor to enforce this provision. All the particularities of the statute were meticulously complied with by the trial court.

The principal statute dealing with division of real property in a divorce is Ark. Stat. Ann. § 34-1214 (Repl. 1962) which provides, *inter alia,* that where a divorce is granted to a wife against the husband the wife is entitled to one-third of the husband's separate personal property absolutely and one-third of the husband's real property for life. This is not applicable in the case at bar. The wife was *not* granted the divorce. But—on the other hand—the husband was not granted the divorce for the *fault* of the wife. No question of fault or guilt arises here. Thus the primary concern of all involved, including the plaintiff once his or her grounds are proved, is protection of the rights and best interest of the insane spouse.

This court, following our statutes, has adhered to the principle of allowing trial courts wide discretion in allowance or disallowance of alimony and property to a wife, *Narisi* v. *Narisi,* 233 Ark. 525, 345 S. W. 2d 620, and we are loath to disturb this practice. In the case at bar three doctors' testimony (which for medical testimony had remarkable definiteness and unanimity) was to the effect that appellant's ward's condition is incur-

able and chances of her improvement are at best remote. The trial court stated that the ward would never be able to enjoy what she already owned (not counting the additional entirety property she will own in fee in the event she survives appellee) and, after requiring appellee to pay for her care and maintenance for life, denied her any part of appellee's separate property. We fail to see that the chancellor abused his discretion in this regard.

The second point urged for reversal by appellant is that the chancellor erred in limiting appellant's right to an accounting from the time of her filing a counterclaim seeking such relief. The court ordered appellee to account for income from the entirety property only from the filing date of appellant's original answer and counterclaim which contained the first demand for such an accounting. Appellant had sought an accounting of the income from the time her ward first became incompetent, some eleven years ago.

Between tenants in common and joint tenants an accounting is proper [See Ark. Stat. Ann. §§ 50-101, 50-102 (1947)] because in such estates there are two or more tenants involved and each owns only part of the property. However, as the trial court pointed out here, this is not the nature of an estate by the entirety in Arkansas. "Tenancy by the entirety is a joint tenancy modified by the common law doctrine that husband and wife are one person in law, and can not take by moieties." *Parrish* v. *Parrish*, 151 Ark. 161, 235 S. W. 792. Thus neither spouse owns an undivided one-half interest in any entirety property—the entire entirety estate is vested and held in each spouse. *Roulston* v. *Hall*, 66 Ark. 305, 50 S. W. 690.

Appellant asks for an accounting "since the separation of the parties in November, 1951." The evidence is undisputed that appellee over a period of ten years sought treatment to rehabilitate his wife and the parties were separated only in the sense that she was away from home undergoing treatment. They were physically apart, but this is no more a separation than if Mrs. Wright had

been in a hospital undergoing treatment for some other ailment with the intention of returning home, or than if she had been away for an extended visit. It should be observed that it does not follow, because Mrs. Wright began to require mental treatment in 1951, that she was henceforth completely and wholly incompetent to agree to her husband's management of their affairs. The evidence shows that from 1951 to 1960 appellee took her to a number of places—clinics and hospitals—throughout the south for treatment and that from 1955 until 1960 appellee maintained his wife in Little Rock in an apartment, which she took care of herself, while she was under treatment by Little Rock doctors, and was not required to be confined until 1960. Under the facts here presented, the chancellor did not err in requiring appellee to account only from the date of appellant's counterclaim. *Brimson* v. *Brimson*, 227 Ark. 1045, 304 S. W. 2d 935.

Appellant's final point urged for reversal is that appellee should have been required to pay appellant's attorneys' fee in the chancery court and should be required to pay her attorneys' fee on appeal. With this contention we heartily agree. Appellee sought the relief from his marriage to an insane spouse which only equity can give. His insane spouse, however, is entitled to every reasonable protection of her interests, including the finest legal services that can be obtained for her at her husband's expense. The decree of the trial court is therefore reversed for entry of an order requiring appellee to pay the balance of appellant's attorneys' fee in the sum of $3,500.00, all costs and an additional $1,000.00 for services rendered on this appeal.

Affirmed in part, reversed in part.