Della S. RUCKS *v.* Martha Kaye TAYLOR, Executrix of the Estate of Floyd Lester RUCKS, Deceased

CA 83-55                                      662 S.W.2d 199

Court of Appeals of Arkansas
Division II
Opinion delivered December 21, 1983

*Honey & Rodgers,* by: *Danny P. Rodgers,* for appellant.

*Eilbott, Smith, Eilbott & Humphries,* by: *Zachary Taylor,* for appellee.

TOM GLAZE, Judge. This appeal arises from the trial court's decision to enforce a separation and property settlement agreement. The court found the parties had agreed that their property, held by the entirety, should be converted to a tenancy in common and sold, with the proceeds to be divided equally between them. Relying on *Killgo* v. *James,* 236 Ark. 537, 367 S.W.2d 228 (1963), appellant argues that she and her husband, Floyd Rucks, never intended by their property settlement agreement to terminate immediately their estate by the entirety. Because Mr. Rucks died only eighteen days after he and the appellant consummated their agreement, his estate is represented in this cause by his daughter, appellee Martha Taylor. Mr. Rucks died before he and appellant were divorced and before their property, the subject of the agreement, was sold. Consequently, appellant contends she is the sole owner of the property by virtue of surviving Mr. Rucks, who predeceased her while they were still lawfully married. Appellee, of course, seeks affirmation of the trial court's decision that the subject property be sold and the net proceeds divided between appellant and Mr. Ruck's estate.

Because appellant's contention is based on *Killgo* v.

*James, id.,* we first review the facts and holding in that case. In 1949, the Killgos bought a home as tenants by the entirety; in 1954, they divorced, and the court approved a property settlement by which the parties agreed to sell the home later on and divide the proceeds. Four years later, and before the parties' home was sold, Mr. Killgo died. Mr. Killgo's heirs brought suit against his former wife, claiming that the properly settlement agreement converted the estate by entirety into a tenancy in common and arguing further that they owned a one-half interest in the property. The trial court held that the estate by the entirety continued after the Killgos' agreement, and title vested by survivorship in the former wife. The Supreme Court affirmed the lower court on this point, stating that whether the estate changed into a tenancy in common turned upon the construction of the language in the settlement agreement. That agreement, signed by both parties, was a part of Mr. Killgo's appearance and waiver entered in the parties' pending divorce action; it provided as follows:

> It is understood that the decree to be entered herein is to provide that Charlie C. Killgo is to have possession, use and control of the [home] . . . together with the furniture therein, until such time as the parties to this case may agree on a sales price for such, at which time, on such agreement, the proceeds are first to be used to reimburse Charlie C. Killgo for all monies he has paid or will pay on the mortgage on same after date of August 1953, after which the balance of the proceeds is to be divided between the parties hereto equally.

*Id.* at 541, 367 S.W.2d at 230-31.

In holding that the above language failed to change the parties' estate into a tenancy in common, the Supreme Court stated:

> We cannot find one sentence or even one word, in the agreement or in the decree, to support the conclusion that the parties had an affirmative intention to bring about an immediate termination of the tenancy by the entirety. It is desirable that titles to real property rest in

certainty and stability. For a couple to declare that they will sell a piece of property at some future date and divide the proceeds is not even a roundabout way of saying that they will also become tenants in common at once. The language that the Killgos selected, with the advice of counsel, is perfectly consistent with a desire on their part to leave the estate untouched until a sale should be completed.

*Id.* at 539, 367 S.W.2d at 230.

In the instant case, appellee extracts the following provision from the Rucks' separation and property agreement and, citing *Killgo* as controlling, argues the language in the provision manifests no intent by the parties to change their estate into one in common:

That the residence of the parties hereinafter more completely described, should be sold at fair market value, and following the deduction of all reasonable costs from the sale, the proceeds be divided equally between the parties.

In comparing the foregoing provision with the agreement in *Killgo,* we note three significant differences: (1) the Killgos provided that Mr. Killgo would retain possession, use and control of their home, together with the furniture therein, until the home was sold; on the other hand, the Rucks failed to provide that either of them would remain in possession of their home; (2) the Killgos, contemplating Mr. Killgo's continued possession of the home, provided he would be reimbursed for all monies paid on the mortgage; the Rucks' agreement had no provision for possession or reimbursement to the party in possession; and (3) the Killgos agreed to sell their property at such time as the parties "may agree on a sales price"; whereas the Rucks agreed to sell at fair market value. These differences underscore one important point, *viz.,* the Rucks — in contrast to the Killgos — did not provide for either spouse to continue in possession of their home, and consequently, they deemed a reimbursement provision unnecessary. Although no sale date was specified in their agreement, the Rucks provided the home

would be sold at fair market value, which presumably could have been accomplished within a reasonable time from when they executed their settlement. Thus, the situation is distinguishable from the one in *Killgo;* we believe the trial court correctly construed the agreement in finding the Rucks intended the instrument to have an immediate effect. Furthermore, we find sufficient evidence to support the trial court's conclusion that the parties intended to convert their estate to a tenancy in common.

In considering whether the Rucks intended to change their estate to a tenancy in common, we must refer to other pertinent provisions contained in their agreement.[1] Before doing so, however, we briefly note that since *Killgo* was decided, a significant statutory change has occurred involving the dissolution of estates by the entirety in divorce actions. At the time *Killgo* was decided, the trial court was required specifically to dissolve an estate by entirety in its decree in order for the parties to be treated as tenants in common after their divorce; if such action was not requested or ordered, they continued holding their property be the entirety. *See* Ark. Stat. Ann. § 34-1215 (Repl. 1962). In 1975, the Arkansas General Assembly enacted Act 457 [now compiled as Ark. Stat. Ann. § 34-1215 (Supp. 1983)], which provided that unless the court's decree provided otherwise, property held by the entirety was automatically dissolved at divorce, and the parties would be treated thereafter as tenants in common. Again, we are faced with a meaningful distinction — this time in the law — between the *Killgo* decision and the one which we must make here. As the court stated in *Killgo*, "the language the Killgos selected, with the advice of counsel, is perfectly consistent with a desire on their part to leave the estate untouched until a sale should be completed." *Id.* at 539-40. Of course, in the instant case, a divorce proceeding was pending between the Rucks, and upon the rendition of a divorce in that action, their estate by the entirety would have dissolved automatically because they had not provided in the agreement for their estate to be treated otherwise. Thus, consistent with the language the

---

[1]In *Killgo,* the entire agreement is that which is set out in this opinion.

Rucks selected, they would have become tenants in common when their divorce was granted.

As noted earlier, other provisions in the Rucks' agreement support the conclusion that they intended to be treated as tenants in common. For example, the parties expressed that *all* rights, interests, liabilities and relations with respect to property and financial matters would be finally and conclusively fixed and determined by their agreement. Additionally, the Rucks provided (a) their agreement would be incorporated in any decree granted in any subsequent divorce action, and (b) they would execute all instruments necessary to "effectuate the provisions of the agreement." Obviously, these requirements are consistent with the parties' intent to hold their property in common, especially when viewed in light of their further stipulation that all of the provisions of their agreement "shall be binding upon their respective heirs, next of kin, executors and assigns." To state the obvious, an estate held by entirety cannot be an estate of inheritance. *Roulston* v. *Hall,* 66 Ark. 305, 50 S.W. 690 (1899). Thus, to give meaning to the provision employed by the parties to bind their personal representatives and assigns, we must assume — at least as the agreement pertains to the subject property — that they intended to hold their property in common — not by the entirety — after the agreement was consummated.

In sum, we believe the trial court construed the parties' agreement correctly and the findings made by it are not clearly erroneous. Therefore, we affirm.

Affirmed.

MAYFIELD, C.J., and COOPER, J., agree.