2009 Ark. App. 662

Troy BUTCHER, as guardian of
Thelma Healy, Appellant,

v.

Diane BEATTY, as personal rep-
resentative of John Healy's
estate, Appellee.

No. CA 08–1226.

Court of Appeals of Arkansas.

Oct. 7, 2009.

Rehearing Denied Nov. 11, 2009.

Southern & Allen, by: Byron S. Southern, Little Rock, for appellant.

Phyllis J. Lemons, Malvern, for appellee.

D.P. MARSHALL, JR., Judge.

This is a dispute about assets between the respective descendants of an older couple in a second marriage. The critical facts are undisputed, and we review the legal issues presented in this guardianship case *de novo*. *Craven v. Fulton Sanitation Service, Inc.*, 361 Ark. 390, 392–93, 206 S.W.3d 842, 843 (2005).

## I.

John and Thelma Healy both had children from their first marriages. The couple married each other in 1979 and held their assets jointly. Those assets included the marital home and two rent houses, all owned as tenants by the entirety. In late 2006, Thelma's son and grandson (appellant Butcher) petitioned to be named guardians of her estate and person. John agreed that Thelma was incapacitated, but he counterpetitioned to be her sole guardian. In early 2007, the probate division of the circuit court found that Thelma was incompetent due to the effects of Alzheimer's. The court appointed Butcher and John as co-guardians of her estate. The court also placed one-half of John and Thelma's liquid assets in a guardianship account solely for Thelma's benefit.

During the next year, the parties wrangled over what to do with the three homes. In September 2007, John filed a divorce complaint against Thelma in another case. The parties also squabbled about personal property, although they would eventually divide it by agreed order. In September 2007, they reached a preliminary agreement about the three homes. But this deal fell apart because the rent houses could not be sold for more than their appraised value.

In early December 2007, the parties finally settled all the real-property issues. The court entered an order reflecting the parties' agreement. John would pay Thelma $21,000.00 for her interest in the marital home, and in turn her co-guardians would convey her interest to John. Thelma would pay John $40,000.00 for his interest in the two rent houses, and he would convey his interest in that real property to her. The order required the parties to accomplish these transactions by 7 February 2008.

John sent his check for $21,000.00, and Butcher eventually executed and returned a fiduciary deed for the marital home. Apparently a sale was pending on one of the rent houses, and so consummation on the rent-house part of the agreement was delayed. John died unexpectedly on 24 January 2008. Butcher (now the sole guardian of his grandmother's estate) refused to pay John's estate the $40,000.00 for the two rent houses. John's daughter (appellee Beatty, the personal representative of her father's estate) petitioned the court to make Butcher fulfill the parties' agreement and pay John's estate the $40,000.00. She pleaded no particular legal or equitable theories. With court approval, Butcher eventually sold the two rent houses for approximately $100,000.00.

The circuit court ordered "specific performance" of the parties' agreement. The court required Thelma (through her guardian) to pay John's estate the $40,000.00. As guardian of Thelma's estate, Butcher appeals.

## II.

Butcher is correct: The circuit court's decision cannot be affirmed on its own terms.

As the surviving spouse, Thelma became the sole owner of the two rent houses by operation of law when John died. *Robertson v. Robinson,* 87 Ark. 367, 368, 112 S.W. 883, 883 (1908). The vesting of title in Thelma alone made performance of the parties' agreement about the rent houses impossible as a matter of fact and law. "[S]pecific performance would not lie where performance is impossible." *Dennis v. Binz,* 230 Ark. 1010, 1012, 328 S.W.2d 85, 87 (1959). In other words, the circuit court erred by granting specific performance because there was no mutuality of remedy. *McIllwain v. Bank of Harrisburg,* 18 Ark. App. 213, 221, 713 S.W.2d 469, 473–74 (1986). John was dead; he could not convey to Thelma what she already owned in return for the $40,000.00.

Butcher also argues that the parties' agreement did not convert their tenancies by the entirety in the rent houses into tenancies in common. Butcher is correct here too. The circuit court had authority under the controlling statute to terminate the entirety tenancies and order the properties' sale. Ark.Code Ann. § 18–60–426 (Repl.2003). But the parties' agreed order reflects an intent to convey the property within the next two months; it does not reflect an unequivocal intent to terminate the tenancies by the entirety immediately on the date that the order was entered. *Compare Rucks v. Taylor,* 282 Ark. 200, 667 S.W.2d 365 (1984), *with*

*Killgo v. James,* 236 Ark. 537, 367 S.W.2d 228 (1963).

 We conclude, however, that this is a right result/wrong reason case. We hold that the rent houses were subject to an equitable lien in John's favor. This argument was not made below and is not made on appeal. But the hydraulic pressure from the judgment means that "[w]e will affirm the court's ruling if it is correct for any reason." *Alexander v. Chapman,* 299 Ark. 126, 130, 771 S.W.2d 744, 746 (1989); *see also Russell v. Watson Chapel School District,* 2009 Ark. 79, at 6 n. 2, 313 S.W.3d 1; *Norman v. Norman,* 347 Ark. 682, 685, 66 S.W.3d 635, 637 (2002).

Here, the probate division of the circuit court "reached the right result, even though it may have announced the wrong reason." *Norman, supra.* Thelma's estate owed John's estate $40,000.00 from the rent-house sale proceeds because the property (both the realty and then the sale proceeds) was subject to an equitable lien. The lien arose from the parties' agreed order and the resulting unjust enrichment to Thelma's estate from getting all the sale proceeds notwithstanding the parties' agreement.

 "An equitable lien is a right to have a demand satisfied from a particular fund or ⌐₅specific property." *C.A.R. Transportation Brokerage Co. v. Seay,* 369 Ark. 354, 361, 255 S.W.3d 445, 451 (2007). The lien may arise by implication from the parties' conduct and dealings or from an agreement. *Ibid.* This remedy "awards a nonpossessory interest in property to a party who has been prevented by fraud, accident, or mistake from securing that to which he was equitably entitled." *Ibid.; see generally* Howard W. Brill, *Equity and the Restitutionary Remedies: Constructive Trust, Equitable Lien, and Subrogation,* 1992 ARK. L. NOTES 1, 7–9; RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 56 (Tentative Draft No. 6, 2008).

As Professor Brill has noted, Arkansas law on equitable liens is underdeveloped. Brill, *supra,* at 7. *Seay's* list of doctrinal categories (fraud, accident, or mistake) is illustrative, not exhaustive. The *Seay* court made this clear when it emphasized the many kinds of situations where this equitable remedy may be appropriate. The lien "may arise by implication out of general considerations of right and justice, where, as applied to the relations of the parties and the circumstances of their dealings, there is some obligation or duty to be enforced." *Seay,* 369 Ark. at 361, 255 S.W.3d at 451 (quotation omitted). Here, John's death two weeks before the conveyance deadline was the unexpected intervening event—the functional equivalent of an accident—that prevented the complete consummation of the parties' agreement.

 The law's tendency is to limit rather than expand all constructive liens. *Seay,* 369 Ark. at 362, 255 S.W.3d at 451. In the absence of fraud, there must be no adequate remedy at law ⌐₆and a basis for equitable relief. *Ibid.* There was no fraud here. John's estate has no adequate remedy at law, however, because of the legal effect of the tenancies by the entirety. And there is a basis for equitable relief. Thelma's estate has been unjustly enriched based on the happenstance of John's death and her guardian's refusal to comply with the agreed order. John and Thelma agreed to transfer property interests in exchange for money, and John performed his part of the agreement. All the conditions for imposing an equitable lien therefore exist.

We have found only one reported Arkansas case involving an equitable lien on property held by the entirety or funds

derived from property held by the entirety. *Warren v. Warren,* 11 Ark. App. 58, 665 S.W.2d 909 (1984). Though the *Warren* court reversed the trial court's imposition of the lien, this precedent indirectly supports imposing one in this case. Mrs. Warren got an equitable lien for $3,200.00 on the proceeds of the sale of real property held with Mr. Warren as tenants by the entirety. This court reversed because there was no evidence of an agreement that Mrs. Warren was merely loaning her husband half of the purchase price of the property; she did not overcome the strong legal presumption that the advance was a gift. 11 Ark. App. at 60–61, 665 S.W.2d at 910–11.

The parties here admit their agreement. The circuit court, moreover, approved it by order. *Warren* does not hold that an equitable lien may never be imposed on property held as tenants by the entirety or on the sale proceeds from such property. That reasoning would have been an easy way to reverse the *Warren* judgment. Instead, the court assumed that entirety property and its sale proceeds could be subject to an equitable lien if the facts showed an agreement creating some obligation. *Warren,* 11 Ark. App. at 61, 665 S.W.2d at 911. That is precisely the situation in this case.

█ We have looked for cases from other jurisdictions on point. The entireties/equitable lien issue, however, seems rarely litigated. In *In re Hope,* 231 B.R. 403, 425–26 (Bankr.D.C.1999), a bankruptcy court held that the debtor's wife was entitled to an equitable lien on real property held as tenants by the entirety based on the spouses' agreements (similar to the ones in this case) dividing property. This decision is persuasive authority for imposing a lien in this case. Contrary authority exists. The New York Court of Appeals rejected an equitable lien in similar circumstances because no "wrongdoing" existed to support the lien. *In re Estate of Violi,* 65 N.Y.2d 392, 492 N.Y.S.2d 550, 482 N.E.2d 29, 32–33 (1985). The court did not hold that entireties property may never be subjected to an equitable lien. In any event, this New York case lacks persuasive power in Arkansas: our law is clear that wrongdoing is not required for imposing an equitable lien. *Seay, supra.*

█ We acknowledge the settled law that property agreements made in anticipation of divorce do not control entirety property if one spouse dies before entry of the decree. *E.g., Ginsburg v. Ginsburg,* 353 Ark. 816, 822, 120 S.W.3d 567, 570 (2003). For two reasons, that law does not govern here. First, John and Thelma were disposing of and dividing their property in the guardianship proceeding, not the divorce action. The probate division of the circuit court entered the agreed order, not the domestic relations division. Second, Thelma had been adjudicated incompetent. Under the statute, John could not get a divorce from Thelma until (among other things) she had been at some institution for three years based on her "incurable insanity" and John had provided for her care for the rest of her life. Ark.Code Ann. § 9–12–301(b)(6)(A)–(B) (Repl.2008). John and Thelma were not dividing property in anticipation of a divorce in the next several months. *Cf. Ginsburg, supra.* Thelma's mental incapacity had put the divorce case on hold for several years. They were dividing property in the guardianship instead of proceeding in the divorce case. This undisputed fact brings this case out from under the precedents where one spouse dies before an otherwise imminent decree can be entered.

\* \* \*

The parties' undisputed, court-approved, and partly consummated agreement about their realty subjected their rent houses,

and the sale proceeds from those houses, to an equitable lien to prevent unjust enrichment. The circuit court reached the correct result: Thelma's estate owes John's estate the $40,000.00. We therefore affirm the judgment.

ROBBINS, KINARD, and GRUBER, JJ., agree.

HART, J., concurs.

VAUGHT, C.J., PITTMAN, GLADWIN, and BAKER, JJ., dissent.

JOSEPHINE LINKER HART, Judge, concurring.

I agree that this case must be affirmed, however, I cannot agree that we have to affirm for a reason not contemplated by the trial judge, or that the trial judge made any error whatsoever. Somewhat lost in both the majority's and dissent's opinions is a key fact—this case was a probate court proceeding. The fact that the parties or their guardians contemplated divorce is little more than a red herring.

Pursuant to Arkansas Code Annotated section 18–60–426 (Repl.2003), a tenancy by the entirety may be dissolved by a sale *ordered* by the probate court. This is exactly what the December 4, 2007 probate court order accomplished in this case. This order was not appealed.

I submit that our evaluation of the effect of that order should be guided by *Rucks v. Taylor*, 282 Ark. 200, 667 S.W.2d 365 (1984), where the supreme court held that a tenancy by the entirety may be terminated by an agreement that "shows an intent to terminate all property rights between the parties with the signing of the agreement." I believe that *Rucks* is directly on point and should control this case.[1]

The December 4, 2007 order reduced the obligations of the parties to convey respective deeds and pay certain sums. The transaction involving the marital home was completed prior to John Healy's death. The obligation imposed by the December 4, 2007 probate court order on the guardian of Thelma Healy to pay $40,000 to John was not. It is axiomatic that litigants have a right to rely on a final order.[2]

1. I cannot agree that *Killgo v. James*, 236 Ark. 537, 367 S.W.2d 228 (1963), has any value in the disposition of this case. It was legislatively overruled by Act 457 of 1975, when the legislature created what is now Ark.Code Ann. § 9–12–317 (Repl.2008). Accordingly, *Killgo* is a dead letter.

2. As our supreme court stated in *Tuchfeld v. Hamilton*, 203 Ark. 428, 156 S.W.2d 887 (1941), the passage of the law, now codified as Arkansas Code Annotated section 18–60–426, was intended to promote confidence on the part of parties acquiring real property pursuant to a sale approved by the probate court that they will acquire good title. It stated:

There has been an error in the administration of this estate which apparently escaped notice until detected by a careful title examiner. Such errors should not occur, but they do occur, and the fear of such errors has caused many estates to be sacrificed through the apprehension that the purchaser at a probate sale would acquire a defective title. To remove this fear and to prevent the sacrifice of estates which must be sold under orders of the probate court, Act 263 was passed at the 1919 session of the General Assembly entitled "An Act to Render Conclusive Judgments and Decrees of the Probate Court in Guardian's and Administrator's Sale." This Act appears as § 6257, Pope's Digest, and reads as follows: "In all guardian's sales heretofore or hereafter made, the finding and recital in the judgment or decree of the probate court authorizing and ordering any such sale that the guardian or administrator was duly and legally appointed and qualified; that the sale was conducted according to law; and that the facts set forth in the petition entitled the said guardian or administrator to make the said sale, shall be conclusive and binding on all parties having or claiming an interest in the said sale, save upon direct

Because only the ministerial act of paying money was left to be accomplished, the probate court had the authority to order specific performance to enforce its order. Accordingly, I would find no error in the trial court's decision, and I would affirm.

KAREN R. BAKER, J., dissenting.

The majority's characterization of this appeal as "a dispute about assets between the respective descendants of an older couple in a second marriage" reveals the fundamental flaw in the majority's conception of this case. The ⌊₁₁descendants are "parties" to this case only in their capacity as representatives of the "older couple." Neither Troy nor Diane have any legally recognized interest as individuals in this matter. The question before us is whether Thelma Healy's survivorship interest in the couple's estates by the entirety in the real property at issue was dissolved by the voluntary action of Thelma Healy and John Healy. The majority finds correctly that nothing in the record can support the conclusion that Thelma's survivorship interest was dissolved prior to John's death. Additionally, the record directly contradicts the application of the doctrine of equitable liens. Accordingly, we should reverse.

An estate by the entirety is peculiar to marriage and entails the right of survivorship; the right of survivorship to the whole can only be dissolved in a divorce proceeding, by death, or by the voluntary action of both parties. *Lowe v. Morrison*, 289 Ark. 459, 711 S.W.2d 833 (1986). Troy Butcher is the guardian of Thelma and is her grandson. Diane Beatty is the personal representative of John's estate and is his daughter. Both Troy and Diane agree that Thelma and John were married at the time of John's death. The majority correctly states that "[a]s the surviving spouse, Thelma became the sole owner of the two rent houses by operation of law when John died."

A tenancy by the entirety is not terminated merely by an agreement for the sale of a marital home at a future date. Therefore, Thelma's survivorship interest in the couple's estate placed full ownership of the properties in Thelma when John died. The majority's conception that the dispute is between the heirs, arising from their respective contingent or anticipated inheritances, misleads the majority into finding an equitable lien. However, the doctrine of ⌊₁₂equitable liens has no application to this case.

As the majority recognizes, the circuit court appointed John and Troy as co-guardians of Thelma's estate after finding Thelma incapable of caring for her person or estate. The order specifically found that Thelma was "incompetent by reason of being diagnosed with dementia of the Alzheimer's type with behavioral disturbance and psychosis." The medical documentation cites that Thelma was subject to hallucinations and violent episodes.

The court appointed Troy as sole guardian of Thelma's person. In guardianship cases, the court shall appoint as guardian of an incapacitated person "the one most suitable who is willing to serve." Ark.Code Ann. § 28–65–204(b) (Repl.2004). In making its determination, the court shall give due regard to the "relationship by blood or marriage to the person for whom guardianship is sought." Ark.Code Ann. § 28–65–204(b)(4). *Martin v. Decker*, 96 Ark. App. 45, 52, 237 S.W.3d 502, 507 (2006). While the circuit court found Troy to be

appeal to the circuit court made in such cases as are now provided by law; and such finding and judgment or decree of the

probate court shall not be open to collateral attack save for fraud or duress."
203 Ark. at 431, 156 S.W.2d at 888.

the most suitable individual for the care of Thelma's person, the circuit court's appointment of John as the co-guardian of Thelma's estate recognized John's continuing legal duty to provide for his spouse's care through the available resources. John's appointment as guardian of Thelma's estate was clearly based upon his relationship to her by marriage and his willingness to protect and preserve Thelma's estate for her care. John's duty to Thelma cannot be separated from the balancing of equities that the majority imposes.

Arkansas Code Annotated section 28–65–301(b)(1) lists the duties of the guardian of the estate as follows:

It shall be the duty of the guardian of the estate:

(A) To exercise due care to protect and preserve it;

(B) To invest it and apply it as provided in this chapter;

(C) To account for it faithfully;

(D) To perform all other duties required of him or her by law; and

(E) At the termination of the guardianship, to deliver the assets of the ward to the persons entitled to them.

Ark.Code Ann. § 28–65–301(b)(1) (Repl. 2004).

Therefore, on January 10, 2007, when the circuit court's order appointing John as a co-guardian of Thelma's estate was filed, a specific legal duty was imposed upon John to guard the assets of Thelma's estate for her continued care. An order entered April 29, 2008, appointed Troy as the sole guardian of the estate of Thelma following John's death. According to the record, at the time of John's death, he was still a co-guardian of Thelma's estate with all the attending duties imposed upon him by law.

In September of 2007, approximately four months prior to John's death, he filed for a divorce from Thelma. The record is unclear as to the grounds for the divorce or whether Thelma was institutionalized as a result of her mental state. However, when considering the equities of this case, which we must do to apply an equitable lien, we must also take into account the duty of a spouse who seeks to dissolve the marriage because of a permanent mental condition of his or her partner. When a trial court grants a divorce based upon the ground that one spouse is incurably insane, the spouse granted the divorce is required to provide for the care and maintenance of the defendant spouse for so long as he or she may live. Ark.Code Ann. § 9–12–301(b)(6)(B)(i) (Repl.2008). In addition, the trial court will retain jurisdiction of the parties for the purpose of making such further orders as equity may require to enforce the provisions of the decree requiring the plaintiff to furnish funds for such care and maintenance. Ark.Code Ann. § 9–12–301(b)(6)(B)(ii) (Repl.2008); *see Wood v. Wright,* 238 Ark. 941, 386 S.W.2d 248 (1965) (stating that no question of fault or guilt arises here; thus the primary concern of all involved, including the plaintiff once his or her grounds are proved, is protection of the rights and best interest of the insane spouse). Regardless of the grounds or fault for a divorce, statutory authority recognizes that equity may require an unequal division of property to meet a spouse's needs. Ark.Code Ann. § 9–12–315 (Repl.2008).

Thelma was judicially decreed unable to care for herself or her affairs. Her condition rendered her vulnerable, and John was judicially charged with the duty to protect and preserve her estate for her future care. Statutory law and equitable principles protect spouses in Thelma's position because of their inability to care for themselves. In this case, the trial court

placed that trust in John, Thelma's husband of over twenty-five years, and in Thelma's grandson as co-guardians. The majority's discussion of monies exchanged from Thelma's estate to John's estate or vice versa completely ignores the equitable and legal duties owed by John to Thelma.

Despite John's equitable and legal duties owed to Thelma, the majority reasons that "Thelma's estate has been unjustly enriched based upon the happenstance of John's death and her guardian's refusal to comply with the agreed order." The majority claims that Thelma's estate is unjustly enriched because John's death prevented the dissolution of the tenancy by the entirety, and, if the tenancy had been dissolved prior to his death, John's heirs would have an interest in the disputed assets. In fact and in law, John's heirs had no legally cognizable interest in John and Thelma's tenancy by the entirety. At the time John died, he had a duty to protect and preserve Thelma's tenancy by the entirety for her future care.

In discussing their novel application of the doctrine of equitable liens to these facts, the majority claims that "[t]his remedy 'awards a nonpossessory interest in property to a party who has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled'" and that John's death equates to an accident that unjustly enriched his ward's estate. That premise is untenable when John unquestionably was required to protect and preserve Thelma's estate, including the tenancy by the entirety, for her benefit. Although the majority agrees that no legal basis exists for a termination of the tenancy by the entirety under these facts, they fail to explain how "general considerations of right and justice," require the imposition of a lien on Thelma's estate. If anything, the obligation or duty to be enforced under these circumstances would be John's duty as co-guardian to protect and preserve Thelma's estate for her continued care.

The concurring opinion relies upon the probate court's authority to sell real property held by the entirety "when it shall appear to the court from legal evidence that the interest of the other owner ... would be advanced thereby and that the interest of the incompetent person would not be injuriously affected." Ark.Code Ann. § 18–60–146 (Repl.2003). The concurring opinion further relies upon *Rucks v. Taylor*, 282 Ark. 200, 667 S.W.2d 365 (1984), to assert that since "only the ministerial act of paying money was left to be accomplished, the probate court had the authority to order the specific performance to enforce its order." As discussed above, upon John's death, title to the property vested in Thelma. Any interest of John's that could have been advanced by the termination of the tenancy by the entirety was similarly extinguished by his death. The resources available for the continued care of the surviving spouse, Thelma, would be diminished by removal of that asset from her estate. As the court of appeals stated in *Rucks v. Taylor*, 10 Ark. App. 195, 200, 662 S.W.2d 199, 202 (1983), *aff'd,* 282 Ark. 200, 667 S.W.2d 365 (1984): "To state the obvious, an estate held by entirety cannot be an estate of inheritance."

Accordingly, I dissent.

VAUGHT, C.J., PITTMAN and GLADWIN, JJ., agree.